Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT

FILED-USDC-NDTX-DA
'25 AUG 26 PM3:30
KM

For the Northern District of Texas

Dallas Division

|  |  |
|---|---|
| Daniel Diaz-Alcaraz | Case No.  3 - 25 - C V - 2258 |
| *Plaintiff(s)* | *(to be filled in by the Clerk's Office)* |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Jury Trial: *(check one)*  × Yes  ☐ No |
| -v- | |
| Dallas College | |
| *Defendant(s)* | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | |

Ammented

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I.     The Parties to This Complaint

#### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Daniel Diaz-Alcaraz |
| Street Address | 1414 Winding Brook Circle #171 |
| City and County | Dallas, Dallas County |
| State and Zip Code | Texas, 75208 |
| Telephone Number | (214) 734-5341 |
| E-mail Address | Daniel.DiazAlcaraz@gmail.com |

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

**B.    The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Dallas College |
| Job or Title *(if known)* | |
| Street Address | 1601 Botham Jean Blvd., Dallas, Texas 75215 |
| City and County | Dallas, Dallas County |
| State and Zip Code | Texas, 75215 |
| Telephone Number | (214) 378-1500 |
| E-mail Address *(if known)* | DCLegal@DallasCollege.edu |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

|  |  |
|---|---|
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

## C.     Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Dallas College (District Office) |
| Street Address | 1601 Botham Jean Blvd., Dallas, Texas 75215 |
| City and County | Dallas, Dallas County |
| State and Zip Code | Texas, |
| Telephone Number | (214) 378-1500 |

## II.     Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

×     Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐     Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐     Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

×     Other federal law *(specify the federal law)*:

        42 U.S.C. § 1981 (Equal rights to make and enforce contracts)

×     Relevant state law *(specify, if known)*:

> Texas Labor Code Chapter 21 (Texas Commission on Human Rights Act – race/national origin discrimination

☐    Relevant city or county law *(specify, if known)*:

_____

## III.    Statement of Claim

Plaintiff is a Hispanic/Latino Mexican-American male and former Dallas College student/alumnus and part-time adjunct professor. Plaintiff holds a Bachelor's, Master's, and Doctorate in Educational Leadership and has more than fifteen years of teaching and leadership experience, along with an additional decade in the workforce as a building engineer prior to his career in education. Between April 2023 and November 2024, Plaintiff applied for more than thirty positions, including twenty-six full-time leadership positions at Dallas College, such as Dean of Guided Pathway for Success, Senior Director for Dallas College Promise, and Dean of Success Coaching–Special Populations and Programs. Despite Plaintiff's qualifications, he was rejected from every position without an interview or meaningful consideration, except when a third-party recruiter advanced Plaintiff for a Vice-Provost position. Even then, he was ultimately denied and instead offered only a grant-funded adjunct assignment. The positions for which Plaintiff applied were filled by individuals who were less qualified, including internal candidates and individuals with personal or political ties to Dallas College leadership. Plaintiff repeatedly sought updates through the career portal and by email, but his inquiries were ignored or delayed. On August 25, 2025, Dallas College's HR department confirmed receipt of Plaintiff's complaint but failed to investigate or provide any follow-up. These actions discriminated against Plaintiff on the basis of his race and national origin and denied him fair and equal opportunity in violation of his rights.

   A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

     ✕    Failure to hire me.

     ☐    Termination of my employment.

     ✕    Failure to promote me.

     ☐    Failure to accommodate my disability.

     ☐    Unequal terms and conditions of my employment.

     ☐    Retaliation.

     ☐    Other acts *(specify)*: _____

       *(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

   B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

     Between April 2023 and October 2024, and continuing

   C.    I believe that defendant(s) *(check one)*:

     ✕    is/are still committing these acts against me.

     ☐    is/are not still committing these acts against me.

   D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

☒    race

Plaintiff is Latino
(Mexican-American). Despite
superior qualifications, he was
denied interviews and full-time
positions while less-qualified
non-Hispanic applicants were hired.

☐    color                   _____

☐    gender/sex              _____

☐    religion                _____

☒    national origin         Plaintiff is of Mexican descent.
                             Dallas College favored
                             non-Hispanic applicants and
                             excluded Plaintiff from
                             opportunities for which he was fully
                             qualified.

☐    age *(year of birth)*   _____  *(only when asserting a claim of age discrimination.)*

☐    disability or perceived disability *(specify disability)*

_____

E.    The facts of my case are as follows. Attach additional pages if needed.

1. Plaintiff is a highly qualified Latino educator with over 15 years of academic and leadership experience, including a Doctorate in Educational Leadership (2024) from the University of North Texas, where he also earned his Bachelor's and Master's degrees. In addition to his academic credentials, Plaintiff has more than a decade of technical workforce experience as a building engineer, further demonstrating his record of leadership, responsibility, and professional advancement. He began his academic journey at Brookhaven College (now part of Dallas College) as a first-generation, working-class student, later returning to complete his alternative teaching certification

2. Between April 2023 and October 2024, I applied for more than thirty (30) faculty and leadership positions at Dallas College. Despite meeting or exceeding every listed qualification, I was repeatedly denied interviews and promotions.

3. During this same period, Dallas College hired or promoted less-qualified non-Hispanic candidates into the roles I sought, including individuals who lacked required degrees or, in at least one case, failed to submit a resume at all.

4. The only interview I received was for Vice Provost of E-Learning, a $250,000 role handled by an external search firm rather than Dallas College HR, underscoring the internal gatekeeping used to exclude me.

Additional supporting facts are contained in Plaintiff's attached (see **Attachment #1 - Complaint's Additional Factual Allegations** incorporated by reference.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.   Exhaustion of Federal Administrative Remedies

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

November 27, 2024

B.    The Equal Employment Opportunity Commission *(check one)*:

☐    has not issued a Notice of Right to Sue letter.

☒    issued a Notice of Right to Sue letter, which I received on *(date)*    June 12, 2025

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐    60 days or more have elapsed.

☐    less than 60 days have elapsed.

## V.   Relief

Plaintiff respectfully requests the following relief from the Court:

1.   **Compensatory damages** in an amount to be determined at trial, but believed to be in excess of **$7,500,000 USD (Seven Million Five Hundred Thousand Dollars)**, for lost wages, lost earning capacity, emotional distress, reputational harm, and humiliation caused by Defendant's discriminatory conduct;
2.   **Back pay and front pay**, including the salary and benefits Plaintiff would have received but for Defendant's unlawful conduct;
3.   **Punitive damages**, to the extent permitted by law, based on Defendant's malicious and reckless disregard for Plaintiff's federally protected rights;
4.   **Injunctive and declaratory relief**, including orders requiring Defendant to correct discriminatory practices, reopen or reevaluate hiring processes, and prevent further exclusion of qualified Hispanic/Latino candidates;
5.   **Costs of litigation**, including filing fees, service fees, and expert witness fees if applicable; and
6.   **Any other relief** the Court deems just and proper.

Plaintiff's damages estimate is based on the salary and benefits of comparable executive roles at Dallas College over the remainder of his expected work life, combined with lost retirement contributions, periods of unemployment and underemployment, reduced earnings as an adjunct, emotional distress, reputational harm, and the need for punitive damages to deter future misconduct.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        8 /26 / 2025

Signature of Plaintiff

Printed Name of Plaintiff      Daniel    Diaz - Alcaraz

### B.    For Attorneys

Date of signing:        _____

Signature of Attorney      _____

Printed Name of Attorney      _____

Bar Number      _____

Name of Law Firm      _____

Street Address      _____

State and Zip Code      _____

Telephone Number      _____

E-mail Address      _____

## Attachment 1 – Complaint's Additional Factual Allegations

Pursuant to Section E of the Complaint Form, Plaintiff provides the following additional supporting facts, incorporated by reference into his Complaint:

5. Plaintiff's applications were often ignored or mismanaged. Public Information Requests revealed Dallas College withheld resumes and provided incomplete or redacted records.

6. While less-qualified non-Hispanic candidates secured full-time positions, Plaintiff was offered only part-time, grant-funded ESL teaching assignments at reduced pay despite his doctorate and proven record as an administrator.

7. Plaintiff is a highly qualified Hispanic/Latino Mexican-American educator with over 15 years of academic and leadership experience, including a Doctorate in Educational Leadership (2024) from the University of North Texas, where he also earned his Bachelor's and Master's degrees. In addition to his academic credentials, Plaintiff has more than a decade of technical workforce experience as a building engineer, further demonstrating his record of leadership, responsibility, and professional advancement. He began his academic journey at Brookhaven College (now part of Dallas College) as a first-generation, working-class student, starting in remedial coursework and ultimately graduating ranked #1 in both his Master's and Doctoral programs with a perfect 4.0 GPA. Plaintiff also completed his alternative teaching certification at Brookhaven, making him a rare two-time alumnus of the institution.

### B. Pattern of Discriminatory Hiring Practices

8. Between April 2023 and October 2024, Plaintiff applied for more than thirty positions at Dallas College, including faculty, director, and dean-level leadership roles. Despite meeting or exceeding every listed qualification, Plaintiff was rejected repeatedly, often through automated emails, without being granted interviews or meaningful follow-up.

9. The only interview Plaintiff received was for the Vice Provost of E-Learning position, managed by an outside search firm (BridgeWorks Partners) rather than Dallas College HR, underscoring the internal gatekeeping used to exclude him.

10. Instead of full-time or leadership employment, Plaintiff was offered only a grant-funded, part-time ESL instructor role at $30/hour, less than standard adjunct pay, despite his doctorate and successful record as an administrator elsewhere.

### C. Favoritism Toward Less-Qualified Applicants

11. During this time, Dallas College hired multiple less-qualified, non-Hispanic/Latino applicants into roles for which Plaintiff had applied, including individuals who, according to public records, did not submit resumes or failed to meet posted requirements.

12. Plaintiff was never subject to discipline and consistently earned strong evaluations from students and supervisors. He even created additional ESL opportunities during breaks, reflecting his commitment to

1

students and the community.

13. Applications Plaintiff submitted for internal leadership roles were either ignored or mishandled. In one instance, his application status was listed as "Interview," but a recruiter later admitted it was a mistake, conducted an unscheduled "ad hoc" interview, and then failed to follow up.

### D. Mismanagement of Records

14. On September 27, 2024, Plaintiff submitted Public Information Request #1 regarding his applications. Dallas College did not respond until October 22, 2024, well past the statutory deadline, and the response was incomplete. It omitted resumes, excluded data for filled positions, and produced only partial records. Critically, it revealed that at least one white male candidate was hired without ever submitting a resume, while Plaintiff, despite exceeding posted qualifications, was denied even an interview for the same role. All resumes provided were also redacted to remove references, further limiting transparency.

### E. Adjunct Experience and Constructive Resignation

15. As exclusion continued, Plaintiff resigned from his adjunct ESL role in fall 2024, after a supervisor admitted she herself had waited over 15 years before being promoted to full-time employment.

16. As of this filing, roles that remained vacant during Public Information Request #1 have since been filled exclusively by non-Hispanic candidates, bringing the total to twenty-three full-time positions. The only two Hispanics promoted into administrative leadership positions were existing employees; not a single external Hispanic applicant was hired. This demonstrates Dallas College's token internal promotions and systemic exclusion of outside Hispanic/Latino candidates.

### F. Failure to Investigate and Gross Misconduct

17. Plaintiff had previously experienced exclusion at Region 10 Education Service Center, where a settlement agreement was later disregarded by the institution itself. Seeking fairer treatment, Plaintiff turned to Dallas College, only to encounter the same discriminatory patterns of exclusion.

18. Plaintiff's professional work has been recognized internationally, including being selected to present his research at a scientific conference in Perth, Australia, a stark contrast to the disregard shown by Dallas College.

19. Plaintiff also reported serious misconduct by Dallas College employees in sensitive positions, both by email and through certified correspondence. Dallas College failed to acknowledge, investigate, or respond. This inaction constitutes gross negligence and a breach of the College's duty of care, further evidencing the pretextual and discriminatory nature of its employment practices.

20. Plaintiff's evidence now includes **EXHIBIT 5, Attachment 5D**, an internal Dallas College HR email confirming receipt of his complaint and supporting documentation. Despite this acknowledgment, the

College took no action. This record demonstrates not only neglect but gross negligence, as Dallas College knowingly ignored a received complaint while continuing the same discriminatory and obstructive practices. (See also **EXHIBIT 33, Attachment 33C**, Plaintiff's Pre-Suit Demand Letter.)

### G. Insider Favoritism, Nepotism, and Political Patronage

21. Beyond the irregularities already documented, subsequent public records research has uncovered additional conflicts of interest that highlight Dallas College's systemic departure from fair and transparent hiring. These discoveries further demonstrate that the College's leadership practices were not based on merit but on insider favoritism, nepotism, and political patronage.

22. Spousal Conflict of Interest (Morris–M. G. F.).
Plaintiff identified through state marriage records and College employment data that senior administrator, Dr. Charles Gregory Morris, Vice President of Academic Affairs is legally married to M. G. F., who joined Dallas College in or about 2023 and was promoted to program manager within two years. Internal databases list Dr. Morris and M.G. F. at the same residence, while the Texas Department of State Health Services confirms their marriage registration in 2021. Dallas College failed to disclose or mitigate this conflict, permitting a spousal hire and rapid advancement while Plaintiff, with superior credentials, was systematically excluded.

23. Political Patronage Pipeline (Lonon–Juan C. Garcia).
Records further show that Chancellor Justin Lonon and his current Chief of Staff, Juan C. Garcia, both worked for the City of Dallas prior to April 2022. Garcia served as a Council Committee Coordinator in the City Manager's Office from 2016 until 2022. Immediately upon Lonon assuming the Chancellorship in April 2022, Garcia was installed as Chief of Staff despite lacking prior executive higher education leadership. His resume reflects municipal committee coordination rather than academic administration. This direct City Hall-to-Dallas College pipeline exemplifies political patronage, bypassing merit-based competition in favor of insider loyalty.

24. Suspicious Career Leaps (Dr. Floyd and Others).
Plaintiff also identified executives whose resumes reveal sudden or disproportionate leaps into high-ranking higher education administration without the traditional qualifications typically expected of external applicants. For example, Dr. Shandra Floy, Provost & Vice Chancellor of Workforce Education advanced from a department chair at a small community college directly into an Executive Dean role before becoming one of Dallas College's highest-paid executives. Similarly, Vice Chancellor Dr. Brad Williams, also among the College's top earners at $345,000, began his leadership trajectory with short-term roles including a 4 month White House internship and tribal relations posts before being elevated directly into Director-level development positions. These nontraditional paths quickly escalated into senior administration and, ultimately, top executive roles. Meanwhile, Plaintiff, with a doctorate, extensive teaching and leadership experience, and a record of institutional improvement, was systematically denied even entry into comparable opportunities. This demonstrates that Dallas College applied inconsistent and pretextual standards, rewarding insiders and select identities while excluding more qualified external candidates.

3

25. Hypocrisy of Oversight Roles (Juan C. Garcia on Ethics Commission).

The same Juan C. Garcia installed as Chief of Staff now serves as a Commissioner on the City of Dallas Ethics Advisory Commission (appointed July 2022). While tasked publicly with promoting fairness and preventing conflicts of interest, Garcia himself benefitted from a closed hiring process driven by prior political ties. This irony underscores the degree to which Dallas College and its leadership circle manipulate both public image and internal governance.

26. Public Image vs. Reality.

 Dallas College's public relations materials present Chancellor Lonon as a champion of "*transforming lives and communities*" through fairness, inclusion, and opportunity. In reality, the College under his leadership has engaged in undisclosed spousal hiring, insider promotions, and political patronage appointments. The contrast between Dallas College's stated mission and its concealed practices highlights gross negligence and intentional misrepresentation of its employment processes.

**Conclusion**

These additional facts further support Plaintiff's claims of unlawful discrimination on the basis of race and national origin, and demonstrate that Defendant's stated practices and explanations are pretextual. Plaintiff respectfully requests that the Court grant the relief sought in his Complaint.

Plaintiff further notes that ongoing public records research continues to reveal additional conflicts of interest and discriminatory patterns at Dallas College. Plaintiff expressly reserves the right to amend these pleadings to incorporate such facts as they become available, including claims appropriate for collective or class treatment under Rule 23.

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Dallas District Office**
207 S. Houston Street, 3rd Floor
Dallas, TX 75202
(800) 669-4000
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 06/12/2025

**To:** Dr. Daniel Diaz-Alcaraz
1414 Winding Brook Circle #171
DALLAS, TX 75208
Charge No: 450-2025-00445

EEOC Representative and email:   DARLING MITCHELL
Investigator
Darling.Mitchell@eeoc.gov

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 450-2025-00445.

On behalf of the Commission,

Digitally Signed By:Travis Nicholson
06/12/2025

Travis Nicholson
District Director

**Cc:**
Kristin Higgins
8117 PRESTON RD STE 500
Dallas, TX 75225

Cassidy P Monska
2613 Thomas Avenue
Dallas, TX 75204


Please retain this notice for your records.

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 450-2025-00445 to the

District Director at Travis Nicholson, 207 S. Houston Street 3rd Floor, Dallas, TX 75202.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 450-2025-00445 to the District Director at Travis Nicholson, 207 S. Houston Street 3rd Floor, Dallas, TX 75202.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

## PLAINTIFF'S MASTER EXHIBIT INDEX

**EXHIBIT 1.  Plaintiff's Academic Credentials**_____pp. 3–6

**EXHIBIT 2.  Resumes and Professional Portfolio Submitted**_____pp. 6-17

**EXHIBIT 3.  Log & Evidence of  27 Applications to Full-Time**

**Positions at Dallas College** _____ pp. 18-24

**EXHIBIT 4.  Recruiter & Hiring Manager Notifications**_____ pp. 25-27

**EXHIBIT 5. Application Follow-Ups, Hiring Irregularities, and Gross Negligence**_____ pp. 28-34

**EXHIBIT 6.  Dallas College Policies vs. Practice**_____ pp. 35-41

**EXHIBIT 7.  Demographics of Hires vs. Applicants**_____ pp. 42-44

**EXHIBIT 8.  Qualifications of Hires and Promotions**_____ pp. 45-48

**EXHIBIT 9.  Pattern of Exclusion (Adjunct & Dawson)**

**EXHIBIT 10. Resume Discrepancies: A. B. (Policy Violations - Misrepresentation of Facts & Misalignment)**

**EXHIBIT 11. Resume Discrepancies: V.A. (Policy Violations - Misrepresentation of Facts & Misalignment)**

**EXHIBIT 12. Resume Discrepancies: A. W.  (Policy Violations - Misrepresentation of Facts)**

**EXHIBIT 13. Resume Discrepancies: B. H. (Policy Violations - Misrepresentation of Facts & Misalignment)**

**EXHIBIT 14. Resume Discrepancies: W. S. (Policy Violation - Misrepresentation of Facts)**

**EXHIBIT 15. Resume Discrepancies: A. C. D. (Policy Violation - Misrepresentation of Facts & Conflict of Commitment)**

**EXHIBIT 16. Resume Discrepancies: J. H. (Policy Violation - Conflict of Commitment)**

**EXHIBIT 17. Resume Discrepancies: K. F. (Policy Violation - Misalignment)**

**EXHIBIT 18. Resume Discrepancies: C. J. B. (Policy Violation - Misalignment)**

**EXHIBIT 19. Resume Discrepancies: R. R. (Policy Violation - Interim Dean)**

**EXHIBIT 20. Resume Discrepancies: A. R. (Policy Violations - Misalignment)**

**EXHIBIT 21. Resume Discrepancies: P. G. (Policy Violation - Interim Dean)**

**EXHIBIT 22. Resume Discrepancies: Y. L. (Policy Violation - Misalignment)**

**EXHIBIT 23. Resume Discrepancies: C. C. (Policy Violation - Mishandled Application)**

**EXHIBIT 24. Resume Discrepancies: G. R. (Policy Violation - Mishandled Application)**

**EXHIBIT 25. Resume Discrepancies: K. K. (Policy Violation - Mishandled Application)**

**EXHIBIT 26. Resume Discrepancies: M. D. S. (Policy Violation - Mishandled Application)**

**EXHIBIT 27. Flow of Funds & Power (Commit–Promise–Dallas College)**

**EXHIBIT 28. Structural Overlap: Few Roads to Leadership**

**EXHIBIT 29. Comparative Hiring Matrix & Applicant Pool Analysis**

**EXHIBIT 30. Public Evidence: Harris vs. Diaz-Alcaraz (RateMyProfessors)**

**EXHIBIT 31. Adjunct Experience Failures**

**EXHIBIT 32. Student Testimonials**

**EXHIBIT 33. Counsel Correspondence, Procedural Misconduct, and Plaintiff's Demand**

**EXHIBIT 34. Lack of Executive/Board Meeting Notices**

**EXHIBIT 35. Public Information Requests (PIR #1 and PIR #2; Records Designated for Production in Discovery)**

**EXHIBIT 36. Statistical Analysis of Hiring & Promotions (Significance Testing to be Supplemented in Discovery)**

**EXHIBIT 37. Expert Statistical Report on Disparate Impact (to be designated if case proceeds to trial)**

**EXHIBIT 38. Spousal Conflict of Interest (Dr. Morris– M.G.F.)**

**EXHIBIT 39. Political Patronage Pipeline (Dr. Lonon– Juan C. Garcia)**

**EXHIBIT 40. Suspicious Promotions (Dr. Floy & Dr. Williams – the two highest-paid execs).**

*Plaintiff designates EXHIBITs 1–40. At this stage, EXHIBITs 1–8 are attached hereto. EXHIBITS 9 –40 will be produced in discovery and supplemented pursuant to the Federal Rules of Civil Procedure.*
*Collectively, these exhibits provide direct and circumstantial evidence of Dallas College's systemic discrimination, the mismanagement of Plaintiff's applications, and its failure to adhere to its own policies and duties.*

2

**EXHIBIT 1**
**Plaintiff's Academic Credentials**

**Date:** Conferred **2005** (B.A.), **2014** (M.A.), **2015** Principal Certification (Cert.), **2020** Superintendent Cert., **2024** (Ed.D.)

**Source**: University of North Texas – Official Academic Record (complete academic record)

**Relevance**: Establishes Plaintiff's academic qualifications across bachelor's, master's, and doctoral levels, demonstrating superior credentials compared to hires lacking minimum requirements.

**Attachment 1A -** UNT Official Academic Record – Complete Academic Record (B.A. **2005**; M.A. **2014**; Principal Cert. **2015**; Superintendent Cert. **2020**; Ed.D. **2024**)

**Attachment 1A -** UNT Official Academic Record – Complete Academic Record (B.A. **2005**; M.A. **2014**; Principal Cert. **2015**; Superintendent Cert. **2020**; Ed.D. **2024**)

**NAME:** Diaz-Alcaraz Daniel

## UNIVERSITY OF NORTH TEXAS
### DENTON, TEXAS 76203
### OFFICE OF THE REGISTRAR

05/22/2024

Page: 1 Cont

**Social Security Number:** ***-**-5232
**Student Number:** 10403433

**OFFICIAL ACADEMIC RECORD**

Birthdate: 02/09/****

| COURSE NUMBER | TITLE | EARN HRS | GRADE | GRADE PTS | COURSE NUMBER | TITLE | EARN HRS | GRADE | GRADE PTS |
|---|---|---|---|---|---|---|---|---|---|
| **DEGREES AWARDED** | | | | | | | | | |

**DEGREES AWARDED**

Bachelor of Arts — May 2005
UNIVERSITY OF NORTH TEXAS
  MAJOR   International Studies
  CUM GPA   3.222

Master of Education — August 2014
UNIVERSITY OF NORTH TEXAS
  MAJOR   Educational Leadership - EDLE-MED Accelerated Online Pr
  CUM GPA   4.000

Doctor of Education — May 2024
UNIVERSITY OF NORTH TEXAS
  MAJOR   Educational Leadership
  CUM GPA   4.000

**CERTIFICATIONS**

Professional Service Principal — May 2015

Prof Serv Superintendent — December 2020

**\*\*\* Undergraduate Transcript \*\*\***

**2003 Fall**

| | | | | |
|---|---|---|---|---|
| HIST 4190 | MEXICO SN 1810 | 3.0 | B | 9.0 |
| HIST 4260 | TOPICS IN HISTORY | 3.0 | B | 9.0 |
| HIST 4580 | AFRICA TO 19 CENT | 3.0 | B | 9.0 |
| AECO 4120 | NEGOTIATION | 3.0 | B | 9.0 |

TRANSFER CREDIT
  Dallas County Community College
    Transfer Credit Summary   58.0

Academic Status   Good Standing

| Undergraduate | EARN HRS | P-NP HRS | AIMP HRS | GRADE PNTS | GPA |
|---|---|---|---|---|---|
| Current | 12.0 | 0.0 | 12.0 | 36.0 | 3.000 |
| Cumulative | 12.0 | 0.0 | 12.0 | 36.0 | 3.000 |
| TRF Hrs Included | 70.0 | | | | |

**2004 Spring**

| | | | | |
|---|---|---|---|---|
| PSCI 3700 | AFRICAN POLITICS | 3.0 | B | 9.0 |
| PSCI 3810 | INTERN RELATIONS | 3.0 | B | 9.0 |
| PSCI 4700 | POLITICAL CORRUPTION | 3.0 | B | 9.0 |
| BCIS 2610 | INTR COMP IN BUSI | 3.0 | C | 6.0 |
| PHED 1000 | HLTH RLTD FITNESS | 3.0 | A | 12.0 |

Academic Status   Good Standing

| Undergraduate | EARN HRS | P-NP HRS | AIMP HRS | GRADE PNTS | GPA |
|---|---|---|---|---|---|
| Current | 15.0 | 0.0 | 15.0 | 45.0 | 3.000 |
| Cumulative | 27.0 | 0.0 | 27.0 | 81.0 | 3.000 |
| TRF Hrs Included | 85.0 | | | | |

**2004 Fall**

| | | | | |
|---|---|---|---|---|
| HIST 4260 | HIST OF MILITARY THOUGH | 3.0 | A | 12.0 |
| PSCI 3700 | EAST EUROPE POLITICS | 3.0 | A | 12.0 |
| PSCI 4700 | WEST EUROPE TERRORISM | 3.0 | A | 12.0 |
| MSCI 2710 | DATA DESC & ANALYSIS | 3.0 | C | 6.0 |
| MGMT 4660 | INTERNATIONAL MGMT | 3.0 | B | 9.0 |

TRANSFER CREDIT
  Dallas County Community College
    Transfer Credit Summary   4.0

TRANSFER CREDIT
  UNT - Non-Traditional Credit Rules
    Transfer Credit Summary   14.0

Academic Status   Good Standing

| Undergraduate | EARN HRS | P-NP HRS | AIMP HRS | GRADE PNTS | GPA |
|---|---|---|---|---|---|
| Current | 15.0 | 0.0 | 15.0 | 51.0 | 3.400 |
| Cumulative | 42.0 | 0.0 | 42.0 | 132.0 | 3.142 |
| TRF Hrs Included | 118.0 | | | | |

---

**Student Number:** 10403433

| COURSE NUMBER | TITLE | EARN HRS | GRADE | GRADE PTS | COURSE NUMBER | TITLE | EARN HRS | GRADE | GRADE PTS |
|---|---|---|---|---|---|---|---|---|---|

**2005 Spring**

| | | | | |
|---|---|---|---|---|
| HIST 4261 | HISTORY OF CHICANO EDUC | 3.0 | A | 12.0 |
| MATH 1400 | COLLEGE MATH | 3.0 | B | 9.0 |
| PSCI 4860 | INTL POLIT ECON | 3.0 | B | 9.0 |
| CJUS 5300 | CORRECTIONAL SYSTEMS | 3.0 | A | 12.0 |

Academic Status   3.5 Honor Roll

| Undergraduate | EARN HRS | P-NP HRS | AIMP HRS | GRADE PNTS | GPA |
|---|---|---|---|---|---|
| Current | 12.0 | 0.0 | 12.0 | 42.0 | 3.500 |
| Cumulative | 54.0 | 0.0 | 54.0 | 174.0 | 3.222 |
| TRF Hrs Included | 130.0 | | | | |

**\*\*\* End of Undergraduate Transcript \*\*\***

This material processed and delivered by Parchment

4

**NAME:** Diaz-Alcaraz ,Daniel

# UNIVERSITY OF NORTH TEXAS
## DENTON, TEXAS 76203
## OFFICE OF THE REGISTRAR

05-22-2024

Page: 1 Cont

**Social Security Number:** ***-**-5232
**Student Number:** 10403433

## OFFICIAL ACADEMIC RECORD

Birthdate: 02-09-****

| COURSE NUMBER | TITLE | EARN HRS | GRADE | GRADE PTS |
|---|---|---|---|---|

### DEGREES AWARDED

Bachelor of Arts — May 2005
UNIVERSITY OF NORTH TEXAS
 MAJOR:  International Studies
 CUM GPA:   3.222

Master of Education — August 2014
UNIVERSITY OF NORTH TEXAS
 MAJOR:  Educational Leadership - EDLE-MED Accelerated Online Pr
 CUM GPA:   4.000

Doctor of Education — May 2024
UNIVERSITY OF NORTH TEXAS
 MAJOR:  Educational Leadership
 CUM GPA:   4.000

### CERTIFICATIONS

Professional Service Principal — May 2015

Prof Serv Superintendent — December 2020

### *** Graduate Transcript ***

#### 2013 Fall

| COURSE NUMBER | TITLE | EARN HRS | GRADE | GRADE PTS |
|---|---|---|---|---|
| EDAD 5700 | PRACTICUM ED LEAD | 3.0 | A | 12.0 |
| EDAD 5600 | RACE/CLASS/GENDER | 3.0 | A | 12.0 |
| EDAD 5680 | ADMIN K-12 CURR | 3.0 | A | 12.0 |
| EDAD 5620 | ADMIN LEADERSHIP | 3.0 | A | 12.0 |

Academic Status  Good Standing

| Graduate | EARN HRS | P-NP HRS | ATMP HRS | GRADE PNTS | GPA |
|---|---|---|---|---|---|
| Current | 12.0 | 0.0 | 12.0 | 48.0 | 4.000 |
| Cumulative | 12.0 | 0.0 | 12.0 | 48.0 | 4.000 |
| TRF Hrs Included | 12.0 | | | | |

| COURSE NUMBER | TITLE | EARN HRS | GRADE | GRADE PTS |
|---|---|---|---|---|

#### 2014 Spring

| EDAD 5330 | INSTRUC LEADERSHP | 3.0 | A | 12.0 |
|---|---|---|---|---|
| EDAD 5390 | CAMPUS LEVEL SCI LAW | 3.0 | A | 12.0 |
| EDAD 5630 | ORG CHG SCH IMPRV | 3.0 | A | 12.0 |
| EDAD 5400 | MGMT SCH RESOURCE | 3.0 | A | 12.0 |

Academic Status  Good Standing

| Graduate | EARN HRS | P-NP HRS | ATMP HRS | GRADE PNTS | GPA |
|---|---|---|---|---|---|
| Current | 12.0 | 0.0 | 12.0 | 48.0 | 4.000 |
| Cumulative | 24.0 | 0.0 | 24.0 | 96.0 | 4.000 |
| TRF Hrs Included | 24.0 | | | | |

#### 2014 Summer

| EDAD 5610 | COMM PUB REL | 3.0 | A | 12.0 |
|---|---|---|---|---|
| EDAD 5650 | PROF DEV & SUP | 3.0 | A | 12.0 |

Academic Status  Good Standing

| Graduate | EARN HRS | P-NP HRS | ATMP HRS | GRADE PNTS | GPA |
|---|---|---|---|---|---|
| Current | 6.0 | 0.0 | 6.0 | 24.0 | 4.000 |
| Cumulative | 30.0 | 0.0 | 30.0 | 120.0 | 4.000 |
| TRF Hrs Included | 30.0 | | | | |

#### 2014 Fall

| EDAD 5500 | INTERNSHIP | 3.0 | A | 12.0 |
|---|---|---|---|---|

Academic Status  Good Standing

| Graduate | EARN HRS | P-NP HRS | ATMP HRS | GRADE PNTS | GPA |
|---|---|---|---|---|---|
| Current | 3.0 | 0.0 | 3.0 | 12.0 | 4.000 |
| Cumulative | 3.0 | 0.0 | 3.0 | 12.0 | 4.000 |
| TRF Hrs Included | 3.0 | | | | |

*Steven Schwartz*
Steven Schwartz, Registrar

This transcript processed and delivered by Parchment

---

**NAME:** Diaz-Alcaraz ,Daniel

# UNIVERSITY OF NORTH TEXAS
## DENTON, TEXAS 76203
## OFFICE OF THE REGISTRAR

05-22-2024

Page: 2 Cont

**Social Security Number:** ***-**-5232
**Student Number:** 10403433

## OFFICIAL ACADEMIC RECORD

Birthdate: 02-09-****

| COURSE NUMBER | TITLE | EARN HRS | GRADE | GRADE PTS |
|---|---|---|---|---|

#### 2020 Spring

| EDLE 6110 | ADV THEORY & RES | 3.0 | A | 12.0 |
|---|---|---|---|---|
| EDLE 6450 | FINANCE, BUSINESS MGMT | 3.0 | A | 12.0 |

Academic Status  Good Standing

| Graduate | EARN HRS | P-NP HRS | ATMP HRS | GRADE PNTS | GPA |
|---|---|---|---|---|---|
| Current | 6.0 | 0.0 | 6.0 | 24.0 | 4.000 |
| Cumulative | 9.0 | 0.0 | 9.0 | 36.0 | 4.000 |
| TRF Hrs Included | 9.0 | | | | |

#### 2020 Fall

| EDLE 6130 | CULT FOUND ED LEAD | 3.0 | A | 12.0 |
|---|---|---|---|---|
| EDLE 6510 | SEM IN ADV ED LAW | 3.0 | A | 12.0 |
| EDLE 6590 | SUPERINTENDENCY | 3.0 | A | 12.0 |
| EDLE 6033 | INTERNSHIP | 3.0 | A | 12.0 |

Academic Status  Good Standing

| Graduate | EARN HRS | P-NP HRS | ATMP HRS | GRADE PNTS | GPA |
|---|---|---|---|---|---|
| Current | 12.0 | 0.0 | 12.0 | 48.0 | 4.000 |
| Cumulative | 12.0 | 0.0 | 12.0 | 48.0 | 4.000 |
| TRF Hrs Included | 12.0 | | | | |

#### 2021 Spring

| EPSY 6010 | STATS ED RESEARCH | 3.0 | A | 12.0 |
|---|---|---|---|---|
| EDLE 6580 | ADMIN & SUPERVSN | 3.0 | A | 12.0 |

Academic Status  Good Standing

| Graduate | EARN HRS | P-NP HRS | ATMP HRS | GRADE PNTS | GPA |
|---|---|---|---|---|---|
| Current | 6.0 | 0.0 | 6.0 | 24.0 | 4.000 |
| Cumulative | 18.0 | 0.0 | 18.0 | 72.0 | 4.000 |
| TRF Hrs Included | 18.0 | | | | |

| COURSE NUMBER | TITLE | EARN HRS | GRADE | GRADE PTS |
|---|---|---|---|---|

#### 2021 Summer

| EPSY 6020 | RESEARCH METHODS | 3.0 | A | 12.0 |
|---|---|---|---|---|
| EDLE 6520 | PERS ADM IN P SCL | 3.0 | A | 12.0 |

Academic Status  Good Standing

| Graduate | EARN HRS | P-NP HRS | ATMP HRS | GRADE PNTS | GPA |
|---|---|---|---|---|---|
| Current | 6.0 | 0.0 | 6.0 | 24.0 | 4.000 |
| Cumulative | 24.0 | 0.0 | 24.0 | 96.0 | 4.000 |
| TRF Hrs Included | 24.0 | | | | |

#### 2021 Fall

| EDCI 6280 | QUAL RES EDUCATION | 3.0 | A | 12.0 |
|---|---|---|---|---|
| EDLE 6530 | EDUC FACILITIES | 3.0 | A | 12.0 |

Academic Status  Good Standing

| Graduate | EARN HRS | P-NP HRS | ATMP HRS | GRADE PNTS | GPA |
|---|---|---|---|---|---|
| Current | 6.0 | 0.0 | 6.0 | 24.0 | 4.000 |
| Cumulative | 30.0 | 0.0 | 30.0 | 120.0 | 4.000 |
| TRF Hrs Included | 30.0 | | | | |

#### 2022 Spring

| EDLE 6100 | THEOR DEVELOP REFORM | 3.0 | A | 12.0 |
|---|---|---|---|---|
| EDLE 6150 | ETHICS SOC JUST POLICY | 3.0 | A | 12.0 |

Academic Status  Good Standing

| Graduate | EARN HRS | P-NP HRS | ATMP HRS | GRADE PNTS | GPA |
|---|---|---|---|---|---|
| Current | 6.0 | 0.0 | 6.0 | 24.0 | 4.000 |
| Cumulative | 36.0 | 0.0 | 36.0 | 144.0 | 4.000 |
| TRF Hrs Included | 36.0 | | | | |

*Steven Schwartz*
Steven Schwartz, Registrar

This transcript processed and delivered by Parchment

NAME: Diaz-Alcaraz ,Daniel

**UNIVERSITY OF NORTH TEXAS**
**DENTON, TEXAS 76203**
**OFFICE OF THE REGISTRAR**

05 22 2024

Page: 3 End

Social Security Number: ***-**-5232
Student Number: 10403433

**OFFICIAL ACADEMIC RECORD**

Birthdate: 02 09 ****

| COURSE NUMBER | TITLE | EARN HRS | GRADE | GRADE PTS |
|---|---|---|---|---|

**2022 Summer**

| EDLE 6160 | LEARNING COMMUNITIES | 3.0 | A | 12.0 |
| EDLE 6600 | WRITING FOR ED LEAD | 3.0 | A | 12.0 |

Academic Status   Good Standing

| Graduate | EARN HRS | P NP HRS | ATMP HRS | GRADE PNTS | GPA |
|---|---|---|---|---|---|
| Current | 6.0 | 0.0 | 6.0 | 24.0 | 4.000 |
| Cumulative | 42.0 | 0.0 | 42.0 | 168.0 | 4.000 |
| TRF Hrs Included | 42.0 | | | | |

**2023 Spring**

| EDLE 6950 | DISSERTATION | 3.0 | A | 12.0 |

Academic Status   Good Standing

| Graduate | EARN HRS | P NP HRS | ATMP HRS | GRADE PNTS | GPA |
|---|---|---|---|---|---|
| Current | 3.0 | 0.0 | 3.0 | 12.0 | 4.000 |
| Cumulative | 45.0 | 0.0 | 45.0 | 180.0 | 4.000 |
| TRF Hrs Included | 45.0 | | | | |

**2023 Summer**

| EDLE 6950 | DISSERTATION | 3.0 | A | 12.0 |

Academic Status   Good Standing

| Graduate | EARN HRS | P NP HRS | ATMP HRS | GRADE PNTS | GPA |
|---|---|---|---|---|---|
| Current | 3.0 | 0.0 | 3.0 | 12.0 | 4.000 |
| Cumulative | 48.0 | 0.0 | 48.0 | 192.0 | 4.000 |
| TRF Hrs Included | 48.0 | | | | |

**2023 Fall**

| EDLE 6950 | DISSERTATION IN PRAC | 3.0 | A | 12.0 |

Academic Status   Good Standing

| Graduate | EARN HRS | P NP HRS | ATMP HRS | GRADE PNTS | GPA |
|---|---|---|---|---|---|
| Current | 3.0 | 0.0 | 3.0 | 12.0 | 4.000 |
| Cumulative | 51.0 | 0.0 | 51.0 | 204.0 | 4.000 |
| TRF Hrs Included | 51.0 | | | | |

**2024 Spring**

| EDLE 6900 | SPECIAL PROBLEMS | 1.0 | A | 4.0 |

Academic Status   Good Standing

| Graduate | EARN HRS | P NP HRS | ATMP HRS | GRADE PNTS | GPA |
|---|---|---|---|---|---|
| Current | 1.0 | 0.0 | 1.0 | 4.0 | 4.000 |
| Cumulative | 52.0 | 0.0 | 52.0 | 208.0 | 4.000 |
| TRF Hrs Included | 52.0 | | | | |

Dissertation: The Paradox of Culturally Responsive School Leadership A Multiple Case Study

*** End of Graduate Transcript ***

*Shen Schwartz*

The transcript is copyright and delivered by Parchment

**Conclusion: EXHIBIT 1 and its attachment** provide ample evidence the Plaintiff's record establishes advanced academic qualifications B.A., M.A., multiple certifications, and an earned Ed.D., that exceed the published requirements for Dallas College leadership positions. The exclusion of a candidate with these credentials, while less-qualified applicants were hired, confirms that Plaintiff's rejection was not based on merit.

## EXHIBIT 2
### Resumes and Professional Portfolio Submitted

**Date: 2025** (Representative version; similar portfolios were submitted with applications throughout **2023–2025**)

**Source:** Plaintiff's professional dossier, submitted with applications to Dallas College faculty and leadership positions

**Relevance:** Demonstrates Plaintiff consistently provided a comprehensive professional portfolio (resume, teaching evaluations, academic credentials, leadership record), contrasting with Dallas College's hiring of underqualified and less qualified insiders.

**Attachments:**

1. **Attachment 2A**. Portfolio Index (Table of Contents)

2. **Attachment 2B**. Resume (2025 version, representative of prior submissions)

3. **Attachment 2C**. Teaching & Administrative Certifications

4. **Attachment 2D.** Professional Reference - Dallas College

5. **Attachment 2E.** Leadership Evaluation for 2024-2025 (Region 10 ESC)

6. **Attachment 2F.** Published Works (excerpts)

*Complete portfolio available upon request and will be produced in discovery.

**Attachment 2A**. Portfolio Index (Table of Contents)

# Dr. Daniel Diaz
## Portfolio - Table of Contents

TExES English as a Second Language (ESL) Supplemental #154.................................2

TExES ESL Supplemental #154 – Online Course.................................................3

Sheltered Instruction Online Series ...........................................................5

Reach! Magazine Leadership Profile – Spring 2023.............................................6

Reach! Magazine Leadership Profile – Fall 2023................................................8

Reach! Magazine Leadership Profile – Fall 2024..............................................11

Dissertation - The Paradox of Culturally Responsive School Leadership: A Multiple

Case Study(Abstract).........................................................................13

Video Series Tutorials Produced for School Principals and Principal Supervisors in

School Improvement (Unlisted)...............................................................14

Sample Effective Schools Framework Final Report.............................................15

Region 10 ESC 2023-2024 Employee Evaluation.................................................16

**Attachment 2B**. Resume (2025 version, representative of prior submissions)

# Dr. Daniel Diaz

daniel.diazalcaraz@gmail.com
Cell (214) 734 5341

## SUMMARY

Dynamic education professional with extensive experience across elementary, middle, high school, and college levels, specializing in Bilingual/ESL education, instructional design, and school leadership. Co-authored the ESL Supplemental #154 preparation manual for the Texas Education Agency and helped lead the transformation of E. H. Cary Middle from an F to a B rating. Recognized for outstanding service and leadership, with a Doctor of Education in Educational Leadership and multiple certifications. Fluent in Spanish and committed to enhancing educational outcomes for all students. Additionally, has authored five education-related publications.

## CONSULTING EXPERIENCE & ACCOMPLISHMENTS

**Region 10 Education Service Center, Richardson, TX —**
***Supervision and Leadership Development Consultant*** June 2021 – Present
***Bilingual/ESL Consultant*** May 2019 – June 2021

- Co-authored the ESL Supplemental #154 preparation manual for the Texas Education Agency (TEA)
- Co-designed and developed ESL Online preparation course
- Served on various statewide TEA committees
- State of Texas Teacher of the Year selection committee member for Region 10
- Wrote and validated 60 item assessment for ESL certification exam
- Designed, co-developed, and produced Sheltered Instruction Online series
- Received 99 % FOI scores from TEA on Targeted Improvement Plans
- Envisioned and developed immersive simulation for teachers and administrators of Emergent Bilingual students
- Created PD sessions tailored to the specific needs of rural, urban, and suburban school districts serving Emergent bilingual students
- Facilitated over 100 hours of PD

## LEADERSHIP EXPERIENCE & ACCOMPLISHMENTS

**Dallas Independent School District, Dallas, TX**
**Assistant Principal** — July 2014 - June 2018

- Contributed to E. H. Cary's transformation from an F rated school to a B rating under the Texas Education Agency's current accountability system.
- Developed, systemized, and monitored behavioral interventions for at-risk students

- Received Outstanding Service Award for transformational leadership
- Envisioned, planned, and led a high school beautification project with over 250 participants including staff, students, community members and organizations

## TEACHING EXPERIENCE
**Dallas College, Irving, TX**
*Adjunct Professor of ESL* January 2024 – Present
- ESOZ 3010 – ESL Beginner A and B
- ESOZ 3011- ESL Intermediate A and B
- ESOZ 3016 – ESL Speaking and Grammar
- ESOZ 3018 – ESL Success Prep

**George C. Clarke Elementary, Fort Worth, TX Bilingual Teacher** — August 2012- June 2014
- All students in the bilingual cohort met the reading standard in the 5th-grade STAAR test
- Created lesson materials to enrich and supplement the Spanish curriculum
- Assistant soccer coach

**Morningside Middle School, Fort Worth, TX**
**Social Studies Teacher** — August 2011-June 2012
- Received standard teacher certification
- U. S. history teacher
- Head soccer coach

## UNRELATED EXPERIENCE
**Lincoln Property Co./Cousins Properties, Dallas, TX — Building Engineer** – June 2000- July 2011

Building engineer responsible for managing the daily operations and monitoring all the mechanical systems of high-rise commercial office building • Supervised contractors conducting preventive and corrective maintenance on-site • Served as liaison between the building management company and building tenants.

## EDUCATION
**The University of North Texas, Denton, TX**
Doctor of Education in Educational Leadership — January 2020 - May 2024
Education Executive Preparation Program — January 2020 – December 2020
Master of Education in Educational Leadership — August 2013 – June 2014
Bachelor of Arts in International Studies — August 2003 – June 2005
**Brookhaven College, Farmers Branch, TX**
Alternative Teaching Certification — June 2010 – August 2011
Core Classes — August 2001– June 2003

## CERTIFICATIONS/CREDENTIALS

Superintendent (EC-12) • Principal (EC-12) • English as a Second Language Supplemental (EC-6/8-12) • Generalist (EC-6) • Bilingual Generalist (EC-6) • Social Studies (8-12) • Effective Schools Framework (ESF) & Texas Instructional Leadership (TIL) Facilitator • T-TESS & T-PESS • HVAC Universal Cert.

## AWARDS

**The University of North Texas**
Outstanding Master's Student in Educational Leadership — 2014
**E. H. Cary Middle School**
Outstanding Service Award — 2018

## ACADEMIC MERIT SCHOLARSHIPS

The Buchholz Doctoral Program in Education Administration Scholarship Doctoral — 2024
The Buchholz Doctoral Program in Education Administration Scholarship Doctoral — 2023
The Buchholz Doctoral Program in Education Administration Scholarship Doctoral — 2022
The Frank Halstead Educational Leadership Scholarship — 2022
The Buchholz Endowment Fund Scholarship — 2021
The J. Freddy and Stephen F. Waddell Scholarship — 2021
James J. Muro Presidential Scholarship – 2021

## SKILLS

Culturally responsive school leadership, Bilingual/ESL education, & School Turnaround expert • Leading and managing diverse teams • Native fluency in reading, writing, and speaking Spanish • Instructional coaching • Change management • Online and F2F Instructional Design • PD Facilitation • Troubleshooting and problem-solving • Qualitative Research Methods • Research and technical writing • Developing creative solutions • Community outreach • Web design, video and audio production, and editing • e-course production and design • Proficient in various mechanical systems.

## PUBLICATIONS

Texas Education Agency (2019) - TExES English as a Second Language (ESL) Supplemental #154: Preparation Manual
Reach! Magazine (Spring 2023) – The Most Important Game of his Life
Reach! Magazine (Winter 2024) – Keeping it Lively with "the Educator Emcee"
The University of North Texas (June 2024) – The Paradox of Culturally Responsive School Leadership: A Multiple Case Study
Reach! Magazine (Fall 2024) – Bell to Bell Instruction: A Family Affair
The Meteoric Society 2025 International Conference, Perth, Australia (Abstract -July, 2025) - Revisiting a Forgotten Impact: Field and Historical Evidence for an 18th-Century Meteorite in North Texas

**Attachment 2C**. Teaching & Administrative Certifications

# Texas Educator Certificate

*This certifies that*

# Daniel Diaz-Alcaraz

*has fulfilled requirements of state law and regulations of the*
*State Board for Educator Certification*
*and is hereby authorized to perform duties as designated below:*

| STANDARD | | | |
|---|---|---|---|
| **Description** | **Effective Date** | **Expiration Date** | **Status** |
| **Classroom Teacher** | | | |
| Bilingual Generalist-Spanish | 02/29/2024 | 02/28/2029 | Valid |
| Grades (EC-6) | | | |
| Generalist | 02/29/2024 | 02/28/2029 | Valid |
| Grades (EC-6) | | | |
| Social Studies | 02/29/2024 | 02/28/2029 | Valid |
| Grades (8-12) | | | |
| English as a Second Language Supplemental | 02/29/2024 | 02/28/2029 | Valid |
| Grades (EC-6, 8-12) | | | |
| **Principal** | | | |
| Principal | 02/29/2024 | 02/28/2029 | Valid |
| Grades (EC-12) | | | |
| **Superintendent** | | | |
| Superintendent | 02/29/2024 | 02/28/2029 | Valid |
| Grades (EC-12) | | | |

12

**Attachment 2D.** Professional Reference - Dallas College

November 19, 2024

To whom it may concern,

It is my pleasure to recommend Dr. Daniel Diaz, a dedicated and compassionate professional who consistently demonstrates exceptional commitment to his work. During the year I had the privilege of working with him, Dr. Diaz stood out as one of the most enthusiastic and diligent instructors in the WorkReadyU program. His unwavering dedication to his students' success, combined with his innovative teaching methods and ability to inspire, set him apart as a truly outstanding educator. Dr. Diaz not only meets expectations but consistently exceeds them, making him an invaluable asset to any organization.

During his service as an English as a Second Language instructor, he showed to be proactive and diligent in his job duties. His collaboration and leadership skills are impressive, and his creativity helped the program to grow in different ways. Dr. Diaz exceptional teaching abilities were evident in his ability to help numerous students master English and computer skills, consistently achieving perfect attendance and completion rates in his classes.

I am confident without reservation that Dr. Diaz talents would make him an outstanding asset to any higher education institution. His creativity, enthusiasm, and unwavering dedication to student success make him a standout professional in his field.

Feel free to contact me at 214-772-2705 or lizethmg0630@gmail.com if you have any questions or would like me to further elaborate on Dr. Diaz talents and achievements.

Sincerely,

Lizeth Moyao
Project Lead, Project Management & Apprenticeship

**Attachment 2E.** Leadership Evaluation for 2024-2025 (Region 10 ESC)



## Region 10 Annual Personnel Evaluation

Employee: Dr. Daniel Daiz _____    **Position Title:**  Consultant _____

**Supervisor:  Ben Dickerson** _____    **Service Area: Supervision and**
**Leadership Development**

**Pay Grade:  102** _____

**Report on Performance Dated:**

**From:** __1/1/2024_____    **To:** _____12/31/2025_____

**A. Job Description Review:**

> Review Completed___X___    Job Description Edited_____

<mark>(Comments if applicable)</mark>

**B. Discussion of Employee's self-reflection of his/her job performance:**

One of Daniel's biggest contributions to the SLD team was during last year involved his knowledge shared with those new to the role or to those who are new to the role as an ESF facilitator. Some of his newer colleagues seek and value my feedback as an ESF case manager and facilitator. Also, the opportunity to highlight leaders in the region(pending publication), especially those involved in the ESF is important and emphasizes the work the team does to support schools. On a personal note, he completed his doctoral coursework and defended his dissertation.

**C. Discussion of Supervisor's assessment of the employee's job performance:**

Daniel's creativity allows him to help school leaders and teachers make real world connections with the content we deliver as it also enables his writing to be more engaging. This is something his colleagues have noted recently during a meeting and he seeks to leverage this creativity to make our work more impactful. Additionally, Daniel's interpersonal relationship skills also help him add value to his job.

**Other areas of success and excellence:**

Daniel successfully defended his dissertation on March 21st, 2024. This was a great accomplishment and one that he has been focused on throughout the year. Daniel has also

14



contributed as a mentor for new ESF Facilitators. This entailed the creation of a presentation deck/resource that outlined the process of scheduling ESF dates and touch points. Daniel also engaged in cross departmental work with Teaching and Learning to help ESF Facilitators outside Teaching and Learning. Daniel led multiple PDs for BOY ESF/TIP training. In addition he also conducted training for new Comprehensive campuses that were identified in November 2023. Daniel was also instrumental in the creation of ESF and TIP video resources that supported other SLD team members during ESF diagnostics and Lever 4 Academic reviews. These videos were also used by DCSIs and Campus Principals.

Daniel operated outside regular duties as assigned by assisting the Communication Service Area in building Leadership Profiles. To date, Daniel has created 2 leadership profiles for the Reach Magazine. This is something Daniel took on as his own initiative and R10 leadership is now hoping that this will be a standard component for future issues.

Daniel has coached district leaders on more than standard TIP support. He has linked LEAs with resources for grants as well as designed tailored support that encompasses bi-lingual support. Daniel has also participated in multiple TEA Feedback Committees serving as a Region 10 Representative. Daniel is often sought after as a person to be part of such committees as he also assisted TEA with Peer Review Assignments as part of the Stronger Connections Grant.

Lastly, Daniel also served as the Case Manager for IL Texas which has campuses that are outside of Region 10 boundaries. This required Daniel to travel to Houston to conduct campus visits and provide technical assistance for TIP and ESF Grant support.

**D. Professional development goals, action steps and timelines for completion:**

**DCSI Coaching for Targeted Improvement Plan Development and Progress Monitoring**
Timeline for completion- May 2024 - May 2025
Goal: Ensure that 100% of DCSIs are provided consistent feedback on Targeted Improvement Plans resulting in no less than 70% of TIPs scoring at least 75%-85% against TEA rubrics on initial and progress submissions.
Steps to accomplish goal- Attend TEA ESF Training. Continuation internal R10 training and practice.

**ESF Facilitation**
Timeline for completion- May 2024 - May 2025
Goal: Execute all ESF Diagnostics in compliance with TEA guidelines and ensure Final Summary Reports meet 94% proficiency as defined by TEA Fidelity of Implementation Guide.
Steps to accomplish goal- Attend TEA training for ESF Fidelity of Implementation. Practice opportunities to apply this learning through cycles of feedback.

**Leadership Development - Ongoing**
My supervisor can continue to support me by recommending colleagues to observe and providing feedback as well as making suggestions for further PD, literature, or conferences

**Attachment 2F.** Published Works (excerpts)

Preparation Manual for the English as a Second Language TExES #154 Supplemental Teacher Certification - Published by the Texas Education Agency (TEA) as Part of a 3 year, $3, 000, 000 USD Grant Awarded to Region10 ESC



Preparation Manual



Texas Education Agency • Austin, Texas
September 2019

Co-created Accompanying Four-Part Online Course for the ESL TExES #154 Preparation Manual



16

Excerpt From the 3rd installment for Reach! Magazine: Educational Leadership Profile



*Photos courtesy of Principal Allyson Bell*

# Bell to Bell Instruction:
## A Family Affair

**By Dr. Daniel Diaz, Region 10 ESC**



Summer school is in full swing at Donald T. Shields Elementary School in Red Oak ISD and the warmth that permeates from the campus can be attributed to two things: the undeniable Texas summer heat, and the positivity that Principal Allyson Bell brings to her campus every day.

Principal Bell has served the students of Shields Elementary for the past four years. She is a native of Mesquite, TX and the product of Mesquite ISD, where she also began her illustrious career before relocating to Red Oak, TX almost seven years ago

prior to becoming a principal at Shields.

Principal Bell found the decision to move from Mesquite to Red Oak challenging. "In Mesquite, the district was small enough to foster a strong sense of community, something I appreciate," Bell shared. However, Red Oak, though smaller, also felt comfortable and familiar to her family.

Education runs deep in the Bell family. Principal Bell wanted to be an educator for as long as she can remember. She would play

**Conclusion: EXHIBIT 2** and its attachment demonstrate Plaintiff consistently submitted a comprehensive professional portfolio, including teaching evaluations, leadership records, certifications, and published works. This dossier demonstrates that Plaintiff not only met but exceeded the standards Dallas College claims to require. Ignoring such a portfolio while advancing less-qualified insiders underscores the arbitrary and discriminatory nature of the hiring process.

**EXHIBIT 3**

**Log and Evidence of 27 Applications to Full-Time Positions at Dallas College**

**Date: April 9, 2023 – October 22, 2024**

**Source:** Plaintiff's application records from Dallas College job portal, email confirmations, and internal tracking log

**Relevance:** Demonstrates Plaintiff's sustained efforts to secure employment at Dallas College during the relevant period. Plaintiff submitted:

 • **26 full-time applications Vetted Internally)** - 23 were eventually filled in; 3 withdrawn from consideration)

 • **7** adjunct **part-time applications (only 1** resulted in an interview and hire on **12/15/2023**; required to reapply on **8/28/2024** due to grant renewal, rehired without interview).

 • **1 application vetted externally (Vice Provost of eLearning, via LinkedIn).** The log also identifies the recruiter and hiring manager for each posting, documenting a systemic pattern of exclusion. **Only application leading to interview for position vetted by BridgeWork Partners via LinkedIn.**

The internal log further identifies the recruiter and hiring manager for each posting, highlighting systemic hiring irregularities. This log does not include Plaintiff's external application for Vice Provost of eLearning (submitted via LinkedIn).

**Attachments:**

**Attachment 3A.** Master Application Log (listing all **26 full-time** and **7 part-time adjunct** submissions between **4/9/2023 – 10/22/2024**). Recruiter and Hiring Manager assignments for each posting

**Attachment 3B.** Job posting excerpts (selected)

**Attachment 3C.** Application confirmation emails (selected)

**Attachment 3D.** Text and email confirmation for Vice-Provost of E-Learning pre-screening and interview on **5/6/2024)**

**Attachment 3A.** Master Application Log (listing all **26 full-time** and **7 part-time adjunct** submissions between **4/9/2023 – 10/22/2024**). Recruiter and Hiring Manager assignments for each posting

**DALLAS COLLEGE**

My Applications

12:55 PM
03/05/2025
Page 1 of 4

Active (0)

Text Return Attribute — You do not have any draft or active applications
Icon [Singular] — wd-graphic-empty-state-cloud

Inactive (36)

| Submitted Date | Job Title | Job Requisition | Application Status | Supervisory Organization | Location | Hiring Manager | Recruiter | Manage Application |
|---|---|---|---|---|---|---|---|---|
| 10/22/2024 | Dean, Academic Compliance | R7539 Dean: Academic Compliance | No Longer Under Consideration | Academic Compliance (Sophia Rose Wilson) | Lecroy Center Campus | Sophia Rose Wilson | Christopher Blake (Private) Marvin Arts | |
| 10/16/2024 | Senior Director College Accessibility Programs | R7477 Senior Director College Accessibility Programs | No Longer Under Consideration | Office of the CIO (Tim Singel) | Brookhaven Campus Cedar Hill Campus Cedar Valley Campus Dallas College Administration Eastfield Campus El Centro Campus Mountain View Campus North Lake Campus Richland Campus | Tim Singel | Marvin Arts | |
| 10/07/2024 | Department Chair - Education | R7343 Department Chair - Education | Declined by Candidate | School of Education (Robert DeHaas) | Dallas College (OPEID) Eastfield Campus | Robert DeHaas | Rafael Vargas (Private) Rosalind Peterson (Private) | |
| 09/30/2024 | Senior Student Success Coach - School of Education | R7161 Senior Student Success Coach - School of Education | Declined by Candidate | Special Populations and Academic Programs (Edy Perez (Private)) | Brookhaven Campus Cedar Valley Campus El Centro Campus | Edy Perez (Private) | Angela Le Blanc (Private) | |
| 09/23/2024 | Director: Intercultural and Global Student Engagement | R6963 Director, Intercultural and Global Student Engagement | No Longer Under Consideration | Multicultural Affairs - Primary (Larisa Olin Ortiz) | Mountain View Campus | Lansa Olin Ortiz | Andre Williams Annca Easley | |
| 09/12/2024 | Associate Dean: Accessibility | R6956 Associate Dean: Accessibility | No Longer Under Consideration | Accessibility (Beverly Neu Menassa) | Mountain View Campus | Beverly Neu Menassa | Andre Williams Annca Easley | |
| 08/28/2024 | Faculty, Adjunct, Non-Credit, AEL Instructor, South Region | R6769 Faculty, Adjunct, Non-Credit, AEL Instructor, South Region | Welcome | Adult and Youth Learning (Monica Stansberry) | Bill J Priest Campus | Monica Stansberry | Rosalind Peterson (Private) | |
| 08/20/2024 | Managing Director, Workforce Operations | R6654 Managing Director: Workforce Operations | No Longer Under Consideration | Workforce Education Operations (Elizabeth Guerra Rodriguez) | El Centro Campus | Elizabeth Guerra Rodriguez | Araceli Jimenez Joshua Soto Rodarte | |

| Submitted Date | Job Title | Job Requisition | Application Status | Supervisory Organization | Location | Hiring Manager | Recruiter | Manage Application |
|---|---|---|---|---|---|---|---|---|
| 08/20/2024 | Director, Opportunity Pipeline | R6638 Director, Opportunity Pipeline | No Longer Under Consideration | Employment Resource Center (Chantel Jones Bigby) | El Centro Campus | Chantel Jones Bigby | Christopher Blake (Private) | |
| 08/09/2024 | Associate Dean: Student Rights and Responsibilities | R6413 Associate Dean: Student Rights and Responsibilities | No Longer Under Consideration | Student Life (Jaris Williams) | Brookhaven Campus | Jaris Williams | Andre Williams Annca Easley | |
| 08/08/2024 | Faculty, Adjunct, Non-Credit, AEL Instructor, South Region | R6504 Faculty, Adjunct, Non-Credit, AEL Instructor, South Region | No Longer Under Consideration | Managing Director Workforce (Clark Wilson) | Bill J Priest Campus | Clark Wilson | Rosalind Peterson (Private) | |
| 08/08/2024 | Faculty, Adjunct, Non-Credit, AEL Instructor, North Region | R6510 Faculty, Adjunct, Non-Credit, AEL Instructor, North Region | No Longer Under Consideration | Adult and Youth Learning (Monica Stansberry) | Bill J Priest Campus | Monica Stansberry | Rosalind Peterson (Private) | |
| 07/31/2024 | Adjunct Faculty Education (2024 - 2025) | R5956 Adjunct Faculty Education (2024 - 2025) | Declined by Candidate | Education Faculty (Ana Rodriguez) | Cedar Valley Campus Eastfield Campus El Centro Campus Garland Campus Irving Campus North Lake Campus Richland Campus | Ana Rodriguez | Annca Easley | |
| 07/16/2024 | Director: International and Global Engagement | R6117 Director, International and Global Engagement | No Longer Under Consideration | Intern'l Engage & Global Compet (Diana Urrutia) | Cedar Valley Campus Eastfield Campus El Centro Campus Mountain View Campus | Diana Urrutia | Andre Williams Annca Easley | |
| 07/16/2024 | Executive Director, Case Management Studio | R6186 Executive Director: Case Management Studio | No Longer Under Consideration | Student Success SRAVC (Karen Stills) | Dallas College Administration | Karen Stills | Araceli Jimenez Joshua Soto Rodarte | |
| 06/25/2024 | Director of Partnerships (School of Education) (Alternative Certification Program) (Grant funded) | R5892 Director of Partnerships (School of Education) (Alternative Certification Program) (Grant funded) | No Longer Under Consideration | Educator Prep. and Teacher Pathways - Assoc Dean (Christopher Reid) | Dallas College Administration | Christopher Reid | | |
| 06/10/2024 | Senior Director, Energy Management and Sustainability | R5600 Senior Director, Energy Management and Sustainability | No Longer Under Consideration | Facilities (Scott Wright) | Service Center | Scott Wright | Treston Cook-Lincoln | |
| 05/17/2024 | Senior Director, Employer Resource Center | R5486 Senior Director, Employer Resource Center | No Longer Under Consideration | Economic Opportunity (Benjamin Magill) | El Centro Campus | Benjamin Magill | Marvin Arts | |
| 04/03/2024 | Senior Director, Strategic Initiatives & Operations | R5111 Senior Director Strategic Initiatives & Operations | No Longer Under Consideration | Advancement Foundation Office (Josh Skolnick) | Dallas College Administration | Josh Skolnick | Treston Cook-Lincoln | |



My Applications

12:55 PM
03/05/2025
Page 3 of 4

| Submitted Date | Job Title | Job Requisition | Application Status | Supervisory Organization | Location | Hiring Manager | Recruiter | Manage Application |
|---|---|---|---|---|---|---|---|---|
| 04/03/2024 | Senior Director, External Engagement & Impact | R5112 Senior Director, External Engagement & Impact | No Longer Under Consideration | Advancement Foundation Office (Josh Skolnick) | Dallas College Administration | Josh Skolnick | Treston Cook-Lincoln | |
| 12/15/2023 | ESL Adjunct Faculty | R4060 ESL Adjunct Faculty | Welcome | Project Lead Instructional Experience (Monica Pauken) | Bill J Priest Campus, Mountain View Campus | Monica Pauken | | |
| 12/05/2023 | ESL Adjunct Faculty - EFC | R3833 ESL Adjunct Faculty - EFC | No Longer Under Consideration | Program Experience - Instructional Design (Angela Payne) | Eastfield Campus | Angela Payne | | |
| 12/05/2023 | ESL Adjunct Faculty | R3839 ESL Adjunct Faculty | No Longer Under Consideration | Program Experience - Instructional Design (Angela Payne) | Cedar Valley Campus, Mountain View Campus | Angela Payne | Rosalind Peterson (Private) | |
| 12/05/2023 | ESL Adjunct Faculty, Continuing Education-1 | R3860 ESL Adjunct Faculty, Continuing Education-1 | No Longer Under Consideration | Communications Instructional CE (Rodrigo Matos) | Brookhaven Campus, Mountain View Campus, North Lake Campus | Rodrigo Matos | | |
| 09/27/2023 | Adjunct Faculty - Humanities | R3116 Adjunct Faculty - Humanities | No Longer Under Consideration | Visual Arts Faculty (David Moya) | Cedar Valley Campus, Eastfield Campus, El Centro Campus, Mountain View Campus, North Lake Campus, Richland Campus | David Moya | | |
| 07/25/2023 | Adjunct Faculty - School of Education-1 | R1257 Adjunct Faculty - School of Education-1 | No Longer Under Consideration | Education Faculty (Ana Rodriguez) | Brookhaven Campus, Cedar Valley Campus, Coppell Campus, Eastfield Campus, El Centro Campus, Mountain View Campus, North Lake Campus, Pleasant Grove Campus, Richland Campus | Ana Rodriguez | Rosalind Peterson (Private) | |
| 07/25/2023 | Dean, Success Coaching - Traditional | R2063 Dean, Success Coaching - Traditional | No Longer Under Consideration | Success Coaching Leadership (Jermain Pipkins) | Richland Campus | Jermain Pipkins | | |
| 05/23/2023 | Associate Dean, Strategic Recruitment Initiatives | R1 Associate Dean, Strategic Recruitment Initiatives | No Longer Under Consideration | Student Outreach & Recruitment (CHAD DECKER) | Dallas College Administration | CHAD DECKER | | |

| Submitted Date | Job Title | Job Requisition | Application Status | Supervisory Organization | Location | Hiring Manager | Recruiter | Manage Application |
|---|---|---|---|---|---|---|---|---|
| 05/15/2023 | Associate Dean, Success Coaching - Traditional | R1190 Associate Dean, Success Coaching - Traditional | No Longer Under Consideration | Success Coaching (Benaie Bailey Jr.) | Brookhaven Campus | Benaie Bailey Jr | | |
| 05/11/2023 | Associate Dean, Educator Certification | R1147 Associate Dean, Educator Certification | No Longer Under Consideration | Educator Prep. and Teacher Pathways (Sara Delano) | Eastfield Campus | Sara Delano | Treston Cook-Lincoln | |
| 05/05/2023 | Associate Dean, Educator Certification | R913 Associate Dean, Educator Certification | No Longer Under Consideration | Education Faculty (Ana Rodriguez) | Eastfield Campus | Ana Rodriguez | | |
| 05/05/2023 | Associate Dean, Educational Partnerships (Long-Term FT Temporary) | R830 Associate Dean, Educational Partnerships (Long-Term FT Temporary) | No Longer Under Consideration | K12 Partnerships (Central Region) (Kimberly Flanders) | El Centro Campus | Kimberly Flanders | | |
| 05/05/2023 | Associate Dean, Teaching Excellence and Innovation | R1006 Associate Dean, Teaching Excellence and Innovation | No Longer Under Consideration | Center for Excellence in Teaching and Learning (Karla Damron) | Eastfield Campus, North Lake Campus, Richland Campus | Karla Damron | | |
| 04/09/2023 | Dean, Success Coaching- Special Populations and Programs | R639 Dean, Success Coaching- Special Populations and Programs | No Longer Under Consideration | Success Coaching Leadership (Jermain Pipkins) | El Centro Campus | Jermain Pipkins | | |
| 04/09/2023 | Senior Director, Dallas College Promise | R723 Senior Director, Dallas College Promise | No Longer Under Consideration | Student Outreach & Recruitment (CHAD DECKER) | Cedar Valley Campus | CHAD DECKER | | |
| 04/09/2023 | Dean, Guided Pathway for Success | R640 Dean, Guided Pathway for Success | No Longer Under Consideration | Student Success SRAVC (Karen Stills) | El Centro Campus | Karen Stills | | |

20

**Attachment 3B.** Job posting excerpts (selected)



# Vice Provost, School of E-Learning

Award winning, BridgeWork Partners, is pleased to assist Dallas College in its search for Vice Provost, School of E Learning.

**View job details and directly apply at BridgeWork Partners.**

## Job Description

The Vice Provost serves in a senior-level capacity supporting and underpinning the faculty role. Responsible for helping shape the academic enterprise through strategic, digital, operational, and technical improvements.

## Required Skills:

- Excellent written, verbal, and presentation skills as demonstrated through prior experience.

- Demonstrated ability to independently manage and supervise a nimble, yet highly efficient core team.

- Able to work effectively with groups and individuals at all levels of management.

- Demonstrated negotiation, consultative, and facilitation skills particularly in academic environments and with academic leaders and faculty.

- Demonstrated ability to function independently and at a high level in a fast-paced environment.

- Experience developing and implementing [programs, services, and/or courses] that are designed to meet the needs of the increasingly diverse college community.

21

## Required Qualifications:

**Requirements:**

 • An earned doctorate for an accredited institution in a relevant field as confirmed by official transcripts.

• Five (5) years of progressively responsible teaching, administrative and/or educational leadership experience.

• Five (5) years upper level administrative/supervisory experience in a community college/higher education environment.

• A distinguished record of academic leadership and experience in higher education administration.

• Demonstrated success in strategic planning, academic operations, and/or program development.

• Strong analytical skills in managing complex data systems that help streamline complex processes, procedures, or help manage complex projects.

• Excellent communication and interpersonal skills with the ability to collaborate effectively with stakeholders.

• An innovative and visionary thinker with a commitment to student success and academic excellence.

• Experience with a large comprehensive community college system with a depth of knowledge of faculty, their job requirements, and their critical role in the academic enterprise.

• Strong organizational and time management skills with the ability to manage multiple priorities.

• Preferred experience in leading a team of creative professionals skilled in delivering timely digital, print, and media solutions within an academic environment.

© 2025 **Dallas College**   1601 Botham Jean Blvd., Dallas, TX 75215   214-378-1500

**Attachment 3C**. Application Confirmation Emails



| Dallas College 3 | Inbox | Hiring Supervisor Review | ... that your application has passed the initial stage of the recruitment process and has now been... | 12/5/23 |
| Dallas College | Inbox | Hiring Supervisor Review | ... that your application has passed the initial stage of the recruitment process and has now been... | 12/15/23 |
| Dallas College | Inbox | Hiring Supervisor Review | ... that your application has passed the initial stage of the recruitment process and has now been... | 10/9/23 |
| Dallas College | Inbox | Hiring Supervisor Review | ... that your application has passed the initial stage of the recruitment process and has now been... | 6/4/23 |

**Attachment 3D**. Text and email confirmation for Vice-Provost of E-Learning pre-screening and interview on **5/6/2024**)



**Hi Daniel, this**
**BridgeWork P........ ... .... ...**
**you applied for the Vice Provost of**
**E-Learning position that we**
**posted with Dallas College and**
**was impressed by your**
**experience. I'd love to hop on a**
**quick call with you to hear more**
**about your background, and go**
**over some details of the role.**
**Below is my availability in (CST):**

**Wednesday from 8:00am**
**-10:30am & from 2:30-5:30pm**

**Thursday from 8:00-9:00am,**
**9:30- 10:00am, & 2:00-5:30pm**

**Please let me know if you can**
**speak with me in one of those**
**windows, or if you need additional**
**options.**

**I look forward to talking with you**
**soon!**

Gmail — Vice Provost of E-Learning Interview 5/6 @ 3:30pm

**M Gmail**

Daniel Diaz-Alcaraz <daniel.diazalcaraz@gmail.com>

**Vice Provost of E-Learning Interview 5/6 @ 3:30pm**
1 message

Sun, May 5, 2024 at 1:58 PM
To: "daniel.diazalcaraz@gmail.com" <daniel.diazalcaraz@gmail.com>

Hi Daniel.

I just wanted to send you the Job Description for the Vice Provost of E-Learning position so you could look over it before your interview on Monday, 5/6 at 3:30pm. The virtual interview will be conducted via Teams as the invite shows. You will be interviewing with Dr. Shawnda Floyd who is the Provost and Vice Chancellor of Workforce Education, and Dr. Greg Morris, the Vice President of Academic Affairs. Here are the links to their LI profiles so you can check them out.
https://www.linkedin.com/in/dr-shawnda-navarro-floyd-48285066
https://www.linkedin.com/in/greg-morris8785

I will be on standby tomorrow to make sure you get on without any difficulties, but I recommend updating your Teams app and testing it out beforehand to make sure you avoid any technical issues.

I hope you have a great interview!

Shannon

**Conclusion: EXHIBIT 3** and its attachment establishes that **Plaintiff consistently met and exceeded** Dallas College's published requirements, including for its **highest-responsibility $250,000 position**. Plaintiff advanced through pre-screening with an **external recruiter** who confirmed she was **"impressed"** by his experience and more than qualified, and he was subsequently interviewed by both the recruiter and Dallas College executives. Yet this proces**s proved to be a sham**: despite Plaintiff's credentials, the position was awarded to an individual who lacked the published minimum requirement of an earned doctorate.

Any claim that Plaintiff was unqualified is categorically false and directly contradicted by both the recruiter's evaluation and the College's own job posting. Instead, this episode demonstrates Dallas College's systemic misrepresentation and manipulation of its hiring process, offering false assurances, staging insincere interviews, and ultimately selecting a less-qualified candidate. Beyond procedural misconduct, these actions inflicted real harm on Plaintiff, who endured the **humiliation, frustration, and distress** of being misled and disregarded despite his qualifications.

## EXHIBIT 4
### Recruiter & Hiring Manager Notifications

**Date: April 2023 – October 2024**

**Source:** Dallas College job portal automated notifications; recruiter-generated messages; email confirmations from Dallas College HR system

**Relevance:** Demonstrates that Plaintiff's applications not only were received (as shown in **EXHIBIT 3**) but advanced to the second stage of review. Notifications informed Plaintiff that he had "passed the first phase" and that his applications were "**under review by the recruiter and hiring manager.**" According to Dallas College's official hiring process, **Step 2** requires that the Talent Acquisition Partner (HR) screen applications for minimum requirements and share qualified applicants with hiring managers. **Step 3 allows hiring managers to review those candidates and possibly schedule interviews**. Therefore, Dallas College's own policy confirms that Plaintiff met the minimum requirements for the positions and was deemed qualified to move forward. Despite this, Plaintiff was excluded from further consideration while less qualified insiders advanced.

**Attachments:**

**Attachment 4A**. Sample notifications from Dallas College job portal confirming Plaintiff "**passed the initial stage... under review by recruiter and hiring manager.**"

**Attachment 4B.** Dallas College Hiring Process (excerpt showing Step 2 – HR screening; Step 3 – hiring manager review).

**Attachment 4A**. Sample notifications from Dallas College job portal confirming Plaintiff "**passed the initial stage… under review by recruiter and hiring manager.**"



26

**Attachment 4B.** Dallas College Hiring Process (excerpt showing Step 2 – HR screening; Step 3 – hiring manager review).

## Hiring Process for Staff

1. Candidates must complete the staff/administrator employment application and submit all required materials by the closing date. If qualified for more than one position, candidates must apply for each position individually.

2. After the closing date, the Talent Acquisition Partner (HR) will screen applications based on minimum requirements and share qualified applicants with the hiring manager.

3. The hiring manager contacts applicants if an interview is requested.

4. The Talent Acquisition Partner (HR) is informed of the final selection, and then the Talent Acquisition Partner calculates a recommended salary.

5. The hiring manager extends a verbal employment offer to the finalist.

6. The Talent Acquisition Partner (HR) will conduct a criminal background check.

7. The Talent Acquisition Partner (HR) will issue a 'conditional offer letter' to the candidate, contingent upon clearance of a criminal background check and receipt of official academic transcripts (if necessary).

**Conclusion: EXHIBIT 4** and its attachments provide evidence that Dallas College's own notifications confirm that Plaintiff met the published minimum qualifications and advanced to the recruiter and hiring manager review stage. Yet, despite clearing this critical checkpoint, Plaintiff was systematically excluded while less-qualified insiders were advanced.

This outcome cannot be excused as oversight. Under Board Policy (Adopted 2/4/2020), the Dallas College Board bears *legal responsibility for all aspects of the operation of the College District*, including hiring. **Policy DA(Local) (Adopted 2/8/2024)** further requires that *all employees are expected to be aware of the policies, procedures, and programs of the College District.* Together, these provisions eliminate ignorance as a defense and bind both the Board and every hiring manager to fair enforcement of the rules.

The decision to advance others while blocking Plaintiff was therefore not a procedural slip, it was a direct violation of Dallas College's own policies. Beyond policy breach, the process inflicted real harm: Plaintiff was misled by assurances of advancement, forced through an insincere review process, and ultimately denied equal consideration despite meeting or exceeding every published requirement.

## EXHIBIT 5
### Application Follow-Ups, Hiring Irregularities, and Gross Negligence

**Date**: August 25, 2025

**Source:** Plaintiff's Emails, Career Portal Records, Dallas College Applicant Policy, and Dallas College PIR #2 Hiring Data

**Relevance**: Exhibit 5 documents Plaintiff's repeated, good-faith efforts to obtain updates on pending applications with Dallas College. Despite providing proof of meeting or exceeding qualifications, Plaintiff's inquiries were consistently ignored, delayed, or obstructed. Attachments 5A–5C contain direct evidence of unanswered communications and mishandled application records. **Attachment 5D adds further weight by showing Dallas College's HR explicitly acknowledged receipt of Plaintiff's complaint (see also Exhibit 33, Attachment 33C), yet failed to investigate or provide any follow-up.**

This pattern demonstrates that Dallas College:

1. Failed to provide required applicant updates in violation of its own policies;

2. Produced contradictory or incomplete hiring records; and

3. Ignored a formally received complaint, constituting gross negligence and deliberate indifference.

Together, these records establish a clear and escalating pattern of neglect, policy violations, and pretext in the hiring process.

**Attachments:**

**Attachment 5A.** Unanswered inquiries.

**Attachment 5B**. Hiring data matrix showing internal favoritism.

**Attachment 5C**. Proof of concealed/contradictory hiring outcome.

**Attachment 5D**. HR "Received" acknowledgment proving they *knew* and still failed to act.

28

**Attachment 5A.** Follow-Ups With Hiring Managers Without a Reply

The first and only instance a hiring manager, S. D. , reached out to the Plaintiff on August 2, 2023 to ask if Plaintiff was still interested in the position of Associate Dean of Education Certification. He replied the same day and said that he was still interested.

---

**Daniel Diaz-Alcaraz** <daniel.diazalcaraz@gmail.com>
To: ████████████████ .edu>

Wed, Aug 2, 2023 at 5:37 PM

G ████████████████

Thank you for the update. As a former Dallas College student, I would love the opportunity to continue to be considered for the position. Please let me know if there is anything else you need from me at this time.

Respectfully,

Daniel Diaz-Alcaraz

El El mié. ago. 2, 2023 a la(s) 5:30 p.m., ████████████████ .edu> escribió:

Hello –

I hope this email finds you well. I am reaching out to you today as you applied for the Associate Dean, Educator Certification role within the School of Education. This role remains open and I would like to understand if you are still

m://mail.google.com/mail/u/0/?ik=eafdcecc03&view=pt&search=all&permthid=thread-f:1773158191400716562&dsqt=1&simpl=msg-f:1773158191400716562&... 1/4

25-2:55 p.m.          Gmail - Dallas College, Associate Dean, Educator Certification - Response Requested by Aug. 4

interested in being considered for this role. If yes, please reply to this email by Aug. 4 to let me know that you would still like to be considered for this role. **If we do not hear from you by Aug. 4, we will remove your application from the pool.**

Thank you and I look forward to your response.

Best,

---

S. D. replied to his response and noted to "expect…an update of your application by August 11, 2023.

---

████████████████ scollege.edu>
To: Daniel Diaz-Alcaraz <daniel.diazalcaraz@gmail.com>

Thu, Aug 3, 2023 at 9:07 AM

Thank you so much for letting me know. Please expect to receive an update regarding the status of your application by Aug. 11.

---

The Plaintiff followed up on August 13, 2023 as he had not received an update. He received an automated message S. D. was out of the office the same day. .



**Daniel Diaz-Alcaraz** <daniel.diazalcaraz@gmail.com>
To: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ollege.edu>

Sun, Aug 13, 2023 at 3:06 PM

I just wanted to follow-up to your last email regarding the status change of my application. I just wanted to inform you that as of today, the application's status has not changed. Do you have any updates regarding the status of the application, or if the date has been pushed forward? Thank you for your assistance.

Respectfully,

Daniel Diaz-Alcaraz

On Thu, Aug 3, 2023 at 9:07 AM ▮▮▮▮▮▮▮▮▮▮▮▮ wrote:

After not receiving any additional communication, the Plaintiff followed up once more on August 18, 2023 but never heard back from S. D. or anyone else regarding the position.

**Automatic reply: Dallas College: Associate Dean, Educator Certification - Response Requested by Aug. 4**

▮▮▮▮▮▮▮▮▮▮▮▮
To: Daniel Diaz-Alcaraz <daniel.diazalcaraz@gmail.com>

Sun, Aug 13, 2023 at 3:07 PM

Thank you for reaching out. I am out of the office for a week of learning with leaders from educator preparation programs from across the country.

Your email is important to me. I look forward to responding to you once I am back in the office on Aug. 14th.

**Daniel Diaz-Alcaraz** <daniel.diazalcaraz@gmail.com>
To: ▮▮▮▮▮▮▮▮▮▮▮ge.edu>

Fri, Aug 18, 2023 at 10:35 AM

I hope you had a productive and insightful week of learning. I wanted to follow-up regarding my Aug. 13th email. As I mentioned in my email, there was no change to the status of my application on the 11th as you had noted. Do you have any updates regarding this process?

I am looking forward for an opportunity to meet you and show you why I am uniquely qualified for the position and how I would be an asset to Dallas College. Please let me know if there is anything else you need from me.

Respectfully,

Daniel Diaz-Alcaraz

After working for over 6 months as an adjunct, the Plaintiff attempted to stand out after receiving a notification that his application for the Executive Director - Case Management Studio had passed the initial stage, he reached out to introduce himself to the hiring manager K. S. and cc'd the recruiter J. S. R. The Plaintiff also shared a video he produced sharing why he was the right fit for the position but never received a reply.



Similarly, he reached out to L.O.O., the hiring manager for the position of Director of Intercultural and Global Engagement on September, 25 2024 to introduce himself and share his electronic portfolio but received no reply.



**Attachment 5B.** Condensed Hiring Data Matrix

| Position | Date Applied | Date Finalist Hired | Months Open (After Plaintiff Applied) | Notes |
|---|---|---|---|---|
| Associate Dean, Educator Certification | 4/9/2023 | 12/11/2023 | 8 mo | Edu/CAN/NR (PIR)/RDIS |
| Associate Dean, Educator Certification | 4/9/2023 | 1/8/2024 | 9 mo | Mgr/Amazon/NRQ/RDISD |
| Dean, Academic Compliance & Educational Policy | 4/9/2023 | 1/2/2025 | 21 mo | Edu /5mo prev/NS (PIR)/PV/RDIS |
| Director, Opportunity Pipeline | 5/11/2023 | 11/1/2024 | 17 mo | HR/Deloitte (unconf)/NS (PIR) / FVE/RDIS |
| Senior Director, Employment Resource Center | 5/11/2023 | 9/1/2021 | N/A | Dir ERC/SL (PIR)/RDIS |
| Associate Dean, Student Rights & Responsibilities | 5/15/2023 | 12/2/2024 | 19 mo | Edu/1.5yr avg/SL (PIR)/NRQ/DRK/RDIS |
| Director, International & Global Engagement | 9/27/2023 | 2/10/2025 | 16 mo | Unk /SL (PIR)/NRQ/FVE |
| Director of Partnerships | 12/5/2023 | 4/18/2022 | N/A | Mgr CFAP/NR /CI/PV |
| Executive Director, Case Mgmt Studio | 12/5/2023 | 11/12/2024 | 11 mo | Edu /SL (PIR)/NRQ /RDIS |
| Sr. Dir, Energy Mgmt & Sustainability | 12/5/2023 | 11/13/2017 | N/A | Energy Mgr/NR (PIR)/PV/RDIS |
| Sr. Dir, Workday Sustainment & Support | 12/5/2023 | 6/1/2023 | N/A | Edu /6mo prev/INT /RES/DRK/RDIS |
| Sr. Dir, External Engagement & Impact | 4/3/2024 | 7/15/2024 | 3 mo | Edu /CI |
| Sr. Dir, Strategic Initiatives & Ops | 4/3/2024 | 5/19/2008 | N/A | Dir /Pre/Award /RDIS |
| Assoc. Dean, Strategic Recruitment Initiatives | 8/8/2024 | 9/1/2023 | N/A | HR/Acct Firm /RDIS |
| Dean, Success Coaching | 8/8/2024 | 12/11/2024 | N/A | Edu /RDIS |
| Assoc. Dean, Success Coaching | 8/9/2024 | 3/18/2019 | N/A | Success Coach/Dir Guidance /OLD (2022)/INT/RES/DRK/FVE/RDIS |
| Assoc. Dean, Educational Partnerships | 8/28/2024 | 7/17/2023 | N/A | Edu (1.1yr only exp)/OLD (2022)/FVE/RDIS |
| Assoc. Dean, Teaching Excellence & Innovation | 9/12/2024 | 8/18/2008 | N/A | Faculty/RDIS |
| Dean, Success Coaching /Special Pops/Programs | 9/30/2024 | 5/5/2009 | N/A | Interim Dean (PIR)/PV |
| Dean, Guided Pathway for Success | 10/22/2024 | 8/8/2012 | N/A | Interim Dean (PIR)/PV |
| Vice Provost, E2 Learning | 4/2024 | 8/1/2024 | 4 mo | Edu /NRQ/RDIS |

*Note for Attachment 5-B.* Abbreviations in the Notes column represent specific irregularities in Dallas College's hiring process. *RDIS* indicates a résumé discrepancy, meaning the selected candidate did not meet the minimum qualifications listed in the job posting. *FVE* denotes a failure to verify employment, where prior work experience was either uncorroborated or misrepresented. *PV* signifies a policy violation, where Dallas College disregarded its own published hiring standards or state requirements, including cases where applications were falsely marked as "No Resume" or omitted entirely from PIR records. *CI* refers to a conflict of interest, in which the selected candidate benefitted from an insider relationship, such as a prior supervisor tie. Additional codes include *CAN (PIR)* for applications with no recorded status, *SL (PIR)* for applications marked "cancelled" in the PIR system, *NS (PIR)* for applications with no recorded discrepancy, *SL (PIR)* for postings still listed as "looking" despite being filled, *NRQ* for cases where no résumé was requested, *OLD (2022)* for outdated résumés reused from earlier applications, *INT* for roles filled by internal promotions (often backdated in the PIR system), *INT-RES* for cases where the candidate's résumé itself identified them as "Interim" at the time of appointment, and *DRK* for discrepant employment records (inaccurate start dates or altered histories that obscure prior service).

32

**Attachment 5C.** PIR #1 Alleges Associate Dean of Educator Certification Was Cancelled. PIR #2 Shows Position Was Filled by C. C. on **1/8/24**

The Plaintiff applied for 2 vacancies of Associate Dean of Educator Certification on **4/9/2023** (See **EXHIBIT 3**, **Attachment 3A**) PIR #1 ( page 3)  notes one vacancy was filled by Y.L. on **12/11/2023** and the second vacancy is noted as "**Position Cancelled**" as of **October 22, 2024.**

Page 3 on PIR #1 <b>October 22, 2024:</b>

Position canceled

However, PIR #2 received on August 11, 2025 shows the position was filled in by C. C. on 1/8/2024:

| Associate Dean, Educator Certification | |
| --- | --- |
| Eastfield Campus | 1/8/2024 |

**Conclusion:** The contradictory PIR #1 and #2 disclosures (initially marking the position as "Cancelled" and later confirming it was filled by C.C. on January 8, 2024) demonstrate clear mishandling and misrepresentation of application records. This inconsistency misled applicants, including Plaintiff, into believing the vacant  position was available, when in fact it had already been awarded internally. Moreover, the hiring manager's unilateral outreach created a reasonable expectation that Plaintiff would be granted an interview, only to abandon communication entirely after his follow-up emails (See Exhibit 5, Attachment 5A).

These discrepancies undermine the transparency and integrity of Dallas College's hiring process, supporting Plaintiff's claim of systemic misrepresentation and record manipulation. Beyond the procedural failures, this conduct inflicted genuine emotional harm, causing Plaintiff confusion, humiliation, and distress from being misled and disregarded despite his qualifications. Together, these factors reflect not only institutional irregularities but also the personal toll of Dallas College's practices on those seeking fair consideration.

**Attachment 5D.** HR *"Received" Email Confirmation* proving they *knew* and still failed to act.

Internal Dallas College HR email acknowledging receipt of Plaintiff's complaint and supporting documentation. Despite this confirmation, Dallas College failed to investigate, respond, or provide the required follow-up under its own applicant policies. This failure constitutes gross negligence and deliberate indifference, reinforcing Plaintiff's claim that the College systematically obstructed his applications while disregarding accountability obligations.



Dallas College's HR acknowledged receipt of Plaintiff's complaint and supporting documentation on August 25, 2025. Despite this confirmation, no investigation, follow-up, or corrective action was taken. This record demonstrates deliberate indifference, gross negligence, and further evidence of Dallas College's pattern of obstructing accountability. The extent of the College's inaction will be further established through discovery.

**Conclusion:** Taken together, **EXHIBIT 5** and its attachments establish that Plaintiff made consistent, good-faith efforts to engage with Dallas College regarding his applications and concerns. Rather than providing fair updates or following its own applicant policies, the College repeatedly ignored inquiries **(5A)**, concealed or manipulated hiring data **(5B–5C)**, and even disregarded a formally acknowledged complaint **(5D)**. This escalating pattern demonstrates not mere oversight, but a deliberate and systemic obstruction of Plaintiff's candidacy. Dallas College's actions reflect gross negligence, pretext, and bad-faith employment practices, the full scope of which will be further demonstrated through discovery.

## EXHIBIT 6

### Dallas College Policies vs. Practice

This exhibit contains excerpts from Dallas College's published policies and state regulations, alongside evidence showing how Defendant's actual hiring practices violated those requirements. Together, these documents establish the inconsistency between Dallas College's written obligations and its actual conduct.

**Date:** Policies Issued (**2015, 2022**, current web publication)

**Source:** Dallas College Board Policies, Local Policies, HR Regulations, and Government Code §657.0045

**Relevance:** Establishes the College's own mandated procedures, contrasted with their actual handling of Plaintiff's applications. Policies require:

- Pre-employment verification of all applications.
- Mandatory advertisement of vacancies (minimum 10 working days).
- Eligibility rules for internal applicants.
- Verification of application information (dismissal for falsification).

.

### This exhibit is supported by the following attachments:

- **Attachment 6A**. Except - Policy DC(REGULATION)-X (Pre-Employment, Advertising) – 2015

- **Attachment 6B**. Excerpt -Policy DC(LOCAL)-X (Eligibility for Internal Application, Interim Appointments, and Promotions) – 2022

- **Attachment 6C**. Excerpt- Dallas College Employment Standards (Quality of Personnel & Objectives)

**Attachment 6A.** Excerpt - Dallas College Policy DC(REGULATION)-X (Pre-Employment Requirements & Application Procedures)

**Excerpt establishing that:**

- All applicants must complete the official Dallas College application process (resumes are not a substitute).

- All information shall be verified by HR prior to employment authorization.

- Any falsification or omission of application information is grounds for dismissal.

**Relevance:** Dallas College repeatedly violated these requirements by advancing and appointing candidates (including  V. A., A.W.,A. B., G. R., M. D. S., and A. R.,) who bypassed the official application process, whose information was not verified, and whose positions were never properly posted. This policy, if followed, would have disqualified the very individuals the College promoted while denying Plaintiff,  who complied with all application requirements.

| Pre-Employment | The College District human resources office will ensure that all forms and documents that are required of new employees are executed and received before employment authorization occurs. College presidents will also institute follow-up procedures to ensure that all new college employees are aware of these pre-employment requirements. |
|---|---|

DALLAS COLLEGE
DC(REGULATION)-X
LDU 2015.03
DATE ISSUED: 5/21/2015

| Applications | All applicants shall complete the application form supplied by the College District. Information in applications for all positions shall be verified before a position is offered. |
|---|---|
| | Any falsification of either information or credentials shall be cause for dismissal or denial to employ. |
| Employment Practices | The College District shall follow prudent personnel practices in the recruiting, interviewing, screening, and employing of all personnel. |

*See* **EXHIBITs 11–26** *for specific resume and PIR evidence of these violations.*

**Attachment 6B**. Excerpt - Policy DC(LOCAL)-X (Eligibility for Internal Application, Interim Appointments, and Promotions) – 2022

**Relevance:** Dallas College Policy DC(LOCAL)-X explicitly **prohibits advertising positions** already filled on **an interim basis** and requires that employees meet minimum qualifications before being promoted internally. Despite this, **Dallas College advertised and accepted applications** for the Dean of Pathway Success and Dean of Success Coaching positions, both of which were already occupied by interim appointees.

Candidate A's resume lists *Interim Dean of Pathway Success* at the time of application, while Candidate B's resume lists *Dean, Success Coaching – Interim*. Plaintiff's application log confirms that both positions were publicly posted and that Plaintiff submitted applications for them. First PIR disclosures further confirmed that these same interim appointees were advanced as finalists and ultimately awarded the roles.

In addition, Dallas College systematically used internal promotions to advance employees who did not meet posted minimum qualifications. As shown in **EXHIBIT 5, Attachment 5B** (Condensed Hiring Data Matrix), multiple employees were promoted despite resumes showing they lacked the required experience or education. Further detail on these promotion practices is provided in Exhibit 5.

| Advertising | The College District will generally advertise all vacant positions for a minimum of ten working days except as provided below. |
|---|---|
| | "Vacant position" will mean an opening that occurs when an employee leaves an existing position or when a position is created. |
| | "Advertise" will mean written notice either inside or outside the College District. |
| | The College District will not advertise a vacant position if the position is: |
| | 1. Filled on an interim basis. |
| | 2. Temporary and/or part-time and requires an employee immediately, as illustrated by, but not limited to, registration employees, summer groundskeepers, and substitute faculty. (It is the intent of this exception to provide flexibility when circumstances require a position to be filled immediately; however, at all other times, a temporary or part-time position will be advertised in accordance with this sub-paragraph.) |
| | 3. A faculty position filled by a full-time faculty member for no more than two regular semesters on a temporary basis. |
| | 4. Filled through reorganization or transfer procedures in this manual. |
| | 5. Declared not vacant by a College President or Provost based upon enrollment. |
| | 6. Filled by internal promotion through the following procedure: |
| |    a. An employee meets minimum qualifications of the vacant position; |
| |    b. An employee is within the same work group as the employee who vacates the position; and |
| |    c. The resulting lower position is advertised. |

**Plaintiff's Application Log (EXHIBIT 3):** Confirms both positions were advertised and applied for despite already being filled by interims.

| 04/09/2023 | Dean Success Coaching: Special Populations and Programs | R639 Dean Success Coaching: Special Populations and Programs | No Longer Under Consideration | Success Coaching Leadership (Jermain Pipkins) Damron | El Centro Campus | Jermain Pipkins |
| 04/09/2023 | Senior Director, Dallas College Promise | R723 Senior Director, Dallas College Promise | No Longer Under Consideration | Student Outreach & Recruitment (CHAD DECKER) | Cedar Valley Campus | CHAD DECKER |
| 04/09/2023 | Dean Guided Pathway for Success | R640 Dean Guided Pathway for Success | No Longer Under Consideration | Student Success SRAVC (Karen Stills) | El Centro Campus | Karen Stills |

37

**Candidate A's resume:** Lists *Interim Dean of Pathway Success* at time of application.

## HIGHER EDUCATION WORK EXPERIENCE

**INTERIM DEAN**          Dallas College          2023 – present
As the current Interim Dean for Pathway Success, I lead Degree Audit,
Career & Transfer Skills Development and Pathway Success
departments. In this capacity I also serve as a student success
administrator at the El Centro campus

**Candidate B's resume:** Lists *Dean, Success Coaching – Interim* at time of application.

| | |
|---|---|
| **Associate Dean, Success Coaching** | April 2021—Present |
| **Dean, Success Coaching-*Interim*** | July 2022—Nov. '22 |
| Dallas College \| Dallas, TX | |

**First PIR disclosure (page 4):** Shows P.G. and R. R.  advanced as sole finalists and later awarded the dean roles



**Dallas College directory (8/21/25)**: Confirms P. G. as Dean; R. R. is still listed as Associate Dean, evidencing inconsistency.



Dean, Guided Pathway for Success

Student Success SRAVC



Associate Dean, Success Coaching

Success Coaches

38

**Attachment 6C**. Excerpt - Dallas College Employment Standards (Quality of Personnel & Objectives)

**Relevance.** Dallas College's own "Employment Objectives" policies emphasize selecting only the "most outstanding personnel available," maintaining accurate hiring practices, and ensuring personnel meet qualifications necessary to deliver quality education. In practice, these commitments were disregarded. As demonstrated in **EXHIBIT 5, Attachment 5B** (Condensed Hiring Data Matrix), Dallas College advanced candidates despite missing resume (PV), omitted applications (PV), and failure to meet minimum qualifications (RDIS). The contrast between these stated ideals and the documented hiring data underscores a pattern of pretext and policy violations.



**DA — Employment Objectives**

Local Policy                                                                          Copy Link

Download Local Policy: PDF | Word

Table of Contents ▾

Adopted: 2/8/2024

**Quality of Personnel**    The quality of any educational institution's program is dependent on the skills, commitment, and enthusiasm of its employees. The Board seeks to employ only the most outstanding personnel available. In return, the Board expects all of its employees to accept and support the institution's philosophy and purposes. Specifically, all employees are expected to be aware of the policies, procedures, and programs of the College District, to devote their professional services and individual skills to the realization of the institution's objectives, and to discharge their duties in such a way as to reflect credit upon the College District.

**Philosophy of Part-Time**    In order to fulfill its commitment to quality education, the College District must have the best qualified instructional personnel
**Employment - Faculty**    obtainable with available resources. The foundation of good instruction is a corps of full-time career teachers endowed with appropriate training and experience and a high degree of professional pride. Additionally, if the College District is to relate to the needs and draw upon the resources of the communities it serves, it should utilize part-time instructional personnel in order to avail itself of the expertise of qualified persons in business, industry, and the professions; provide students with unique insights of practitioners; maintain flexibility in education programs; and maximize the utilization of available resources. To these ends, the Chancellor shall provide for the integration of part-time instructors into appropriate College District programs.

DALLAS COLLEGE
DA(LOCAL)-X                                                                          Policy Source No.
UPDATE 45

**Attachment 6D.** Evidence of Conflicting Records and Misrepresented Vacancies (Associate Dean of Accessibility Services)

Dallas College advertised the Associate Dean of Accessibility Services role in September 2024, despite the position already being filled internally. Public records show that B. N. M was promoted to Dean of Accessibility Services in December 2023, thereby vacating the Associate Dean role. According to PIR #2, the Associate Dean position was awarded to G. R.. However, Dallas College's official staff directory and G.R.'s LinkedIn profile both continue to list her as Director of Accessibility, not Associate Dean.

This conflict between PIR records, staff directory information, and LinkedIn disclosures demonstrates that Dallas College misrepresented the vacancy status of the Associate Dean position at the time of Plaintiff's application. Applicants were misled into applying for a role that was not truly open, in violation of Dallas College's hiring policies.

When read together with **EXHIBIT 5** (Condensed Hiring Data Matrix, Associate Dean of Accessibility entry), this attachment further highlights systemic discrepancies in Dallas College's recruitment practices, including pre-filled roles, undisclosed internal appointments, and conflicting employment records.

**Public LinkedIn Profiles (08/21/2025) followed by titles in PIR #2 (10/22/24), and Dallas College Staff Directory (8/21/2025)**

LinkedIn Profiles



Higher Education Leader

**Experience**

**Dallas College**
25 yrs 1 mo

**Director, Accessibility Services**
Full-time
Jul 2021 - Present · 4 yrs 2 mos

**Dean, Student Support Services**
Full-time
Sep 2011 - Present · 14 yrs

Dean, Accessibility Services – Dallas College

**Dallas College**
Full-time · 16 yrs 7 mos

**Dean of Accessibility Services**
Dec 2023 - Present · 1 yr 9 mos

Provide strategic leadership and manage a budg
...

**Associate Dean of Accessibility Services**
Apr 2021 - Nov 2023 · 2 yrs 8 mos

Titles in PIR #2

Associate Dean, Accessibility

Dean of Accessibility Services

Dallas College Staff Directory

Director, Assessibility Services

**sa**   Associate Dean, Accessibility

40

**Conclusion:** The chart and additional evidence in **EXHIBIT 6** demonstrates that Dallas College's new hires and promotions overwhelmingly benefit White and African American candidates while Hispanic and Asian candidates remain disproportionately excluded. When factoring in the promotion of Rollings, African American promotions rise to match those of White candidates, further highlighting the disparity.

This outcome aligns with the demographics of Dallas College's hiring managers, who are predominantly White and African American as cross-referenced in the PIR #2. The concentration of decision-making power within these two groups directly correlates with who is being hired and promoted, leaving Hispanics and Asians at a systemic disadvantage. Plaintiff's repeated exclusion despite superior qualifications is therefore not an isolated incident but part of a broader pattern of inequitable treatment.

Statistically, the odds of this distribution occurring by chance are extremely low. Instead, the data reflect a structural bias in which opportunities are disproportionately allocated to the same demographic groups as the decision-makers themselves

**Note. Dallas College Board Policy (Adopted 2/4/2020) explicitly states:** "*The Board shall bear the legal responsibility for all aspects of the operation of the College District.*" This language establishes that the Board itself is directly accountable for the hiring and promotion practices at issue, and cannot delegate away or disclaim liability for discriminatory or inconsistent decisions carried out under its authority. **In addition, Dallas College Policy DA(Local) (Adopted 2/8/2024) mandates that** "*all employees are expected to be aware of the policies, procedures, and programs of the College District.*" This provision eliminates ignorance as a defense: every administrator, hiring manager, and HR partner was obligated to know and follow policy, yet nevertheless advanced underqualified insiders while excluding Plaintiff, who exceeded all published requirements.

## EXHIBIT 7
### Demographic of Hires vs Applicants

**Date:** Hiring Cycles **2023–2025** (Dallas College PIR and HR Records)

**Source:** Dallas College PIRs Data, Publicly Available Resumes (LinkedIn.com) Dallas College HR Records

**Relevance:** EXHIBIT 7 provides demographic evidence showing that Dallas College consistently advanced long-term insiders, while systematically excluding external Hispanic applicants. The data demonstrates that although Hispanic candidates applied for multiple leadership roles, none were hired. Instead, less-qualified internal candidates were promoted, reinforcing the pattern of obstruction and favoritism already documented in Exhibits 5 and 6.

- **Zero external Hispanic candidates** were hired into administrative leadership roles.

- **Hispanic promotions** went only to long-term insiders:

  - **R. R.** – 16 years of service, promoted despite limited qualifications and conflicting records.

  - **M. D. S.** – Promoted without a resume in the PIR, with application discrepancies and only two years of educational leadership experience.

  - **A. R.** – 15 years of service, elevated to a "Managing Director" role, despite lacking the bachelor's degree required by policy.

**Plaintiff's record shows** Dallas College consistently bypassed qualified external Hispanic applicants, favoring internal promotions even when minimum qualifications were not met.

### Attachments (EXHIBIT 7):

1. **EXHIBIT 7A.** Narrative Analysis of Hispanic Candidate Exclusion (R.R., M.D.S., A. R.).

2. **EXHIBIT 7B.** New Hires and Promotions by Race/Ethnicity (Chart).

**EXHIBIT 7A**

Narrative Analysis of Hispanic Candidate Exclusion

This section details the only three Hispanic individuals advanced during the relevant hiring cycles.

- R.R. – Promoted to Dean after 14 years of service despite minimal qualifications at entry and conflicting titles in official records. However, his new title is still not reflected on the official Dallas College's Staff website. Prior to joining Dallas College, he did not have any educational experience. The only experience listed on the PIR resume and LinkedIn profile was as a paralegal prior to being hired. Mr. Reyes also noted on the resume he would have submitted for the Dean position that he was already an Interim Dean prior at the time of his application.

- M.D.S. – Promoted without a resume in the PIR, unclear if he was required to apply, and with only two years of verifiable leadership experience. Prior to his managing role at CTAAP, he had 0 years of verifiable educational leadership experience. His experience consisted primarily of teaching and instructional support roles as an instructional coach.

- A.R. – Elevated into a non-administrative "Managing Director" role despite lacking the bachelor's degree required by policy, with conflicting resumes (internal vs. public) and only an associate's degree, yet she was still compared to Plaintiff by external counsel.

**EXHIBIT 7B**

New Hires and Promotions by Race/Ethnicity (PIR Data)

This chart visually confirms Dallas College's exclusion of Hispanic external candidates.

- 0 external Hispanic hires into administrative leadership roles out of 22 filled positions.

- The only Hispanic promotions were long-term insiders promoted under questionable circumstances.

- Other demographic groups (White, African American) were represented among both hires and promotions.



**Conclusion:** The evidence in EXHIBIT 7 and its attachments confirms that Dallas College systematically excluded external Hispanic candidates from leadership roles, instead advancing long-term insiders who often lacked the required credentials. These disparities cannot be explained as chance; they reflect a deliberate pattern of bias in hiring and promotions, consistent with the broader practices documented in Exhibits 5 and 6.

## EXHIBIT 8

### Qualifications of Hires and Promotions

**Date:** Salary Data **(2024–2025)**,

**Source:** Dallas College PIR Salary Data **(2025)**, Public Salary Records: GovSalaries.com,
OpenPayroll.com, OpenGovPay.com **(2024)**, Dallas College 2025 PIR Records, Publicly Available:
LinkedIn.com, and Dallas College's Candidate Resumes, Dallas College HR Compensation Guidelines

**Relevance: EXHIBIT 8** and its attachments compile the salaries and qualifications of individuals who
were hired or promoted into Dallas College leadership positions during the relevant period. The evidence
shows that insiders with incomplete or falsified credentials were advanced into roles paying between
**$90,724 and $250,000 annually**. By contrast, Plaintiff, despite holding an earned doctorate and extensive
leadership experience, earned **only $7,283** over nearly a year and **remains at $0 in 2025 due** to continued
exclusion. This exhibit highlights the extreme disparity between Dallas College's stated requirements and
its actual hiring and compensation practices.

Plaintiff's record shows Dallas College repeatedly disregarded minimum qualifications and compensation
consistency, proving systemic inconsistency between stated policy and actual practice.

**Attachments:**

- **EXHIBIT 8A.** Degrees at Time of Hire by Race (Chart).

- **EXHIBIT 8B.** Publicly Available 2024 Salaries vs Alleged 2025 PIR Salaries (Chart).

- **EXHIBIT 8C.** Largest Salary Jumps vs Leadership Experience (Table).

**EXHIBIT 8A**. Degrees at Time of Hire by Race (Chart)

This chart summarizes the educational credentials, internal/external status, and claimed leadership experience of Dallas College's selected candidates. The data highlights three major issues:

**1. Inflated or Fabricated Experience** – Several candidates claimed prior "leadership" roles that, upon review, did not include actual supervisory or administrative authority.

**2. Falsified or Misrepresented Titles** – Candidates were credited with titles later shown to be false or exaggerated.

**3. Policy Inconsistency** – Candidates lacking the required degrees or minimum years of verifiable educational leadership or educational experience at all were nevertheless hired or advanced, while Plaintiff, who met stated criteria, was excluded.

**Figure 1. Degrees at Time of Hire by Race**



*This figure compares the degrees of White hires versus minority hires at the time they entered Dallas College leadership roles. Despite minorities often holding equal or higher academic credentials, White candidates were hired or promoted into leadership positions at the same or higher salaries. This undercuts any claim that Dallas College was applying consistent, qualification-based standards.*

**EXHIBIT 8B**. Publicly Available 2024 Salaries vs Alleged 2025 PIR Salaries (Chart)



*This figure compares the publicly available 2024 salaries with the alleged 2025 PIR salaries reported by Dallas College. The sharp and inconsistent jumps demonstrate flaws in the compensation methodology and raise questions about how these raises were determined. Some individuals with limited leadership experience received disproportionate increases, while qualified candidates like the Plaintiff were excluded entirely.*

**EXHIBIT 8C.** Largest Salary Jumps vs Leadership Experience (Table).

1. B.B.J - 2024 Public $79, 881 - 2025 PIR: $143, 000 **(Jump: $63, 119)** with 5.5 yrs of ed. Leadership experience.

2. C.C. - 2024 Public: $68, 733 - 2025 PIR: $117, 000 **(Jump: $48, 267)** with 4.0 yrs ed. leadership experience.



**Conclusion:** The salary disparities in **EXHIBIT 8** demonstrate the full impact of Dallas College's systemic bias. Every hire or promotion during this period received between **$90,724 and $250,000**, while Plaintiff was not only excluded but driven into the negative after incurring more than **$10,000** in counsel costs in pursuit of fair consideration. The chart makes the inequity undeniable: underqualified insiders advanced with six-figure compensation, while Plaintiff, holding superior credentials, was left **worse than zero**. Such an outcome cannot be explained by merit or oversight; it is clear evidence of intentional discrimination and exclusion.

**JS 44** (Rev. 09/10)                                    **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Daniel Diaz-Alcaraz | Dallas College |

**(b)** County of Residence of First Listed Plaintiff    Dallas
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Dallas
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

RECEIVED   AUG 26 2025

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Dr. Daniel Diaz-Alcaraz (Pro Se) 1414 Winding Brook Circle #171
Dallas, TX 75228 (214) 734-5341

Attorneys *(If Known)*

Robert C. Wendland

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                    Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury – Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 2000e (Title VII of the Civil Rights Act of 1964) & 42 U.S.C. § 1981

Brief description of cause:
Employment discrimination based on race and national origin.

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**  $7,500,000.00 USD

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE   8-26-25                    SIGNATURE OF ATTORNEY OF RECORD   (Pro Se)

**FOR OFFICE USE ONLY**

JS 44 Reverse (Rev. 03/24)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.